DONALD M. LONGLEY ET AL. *v.* STATE EMPLOYEES
RETIREMENT COMMISSION
(AC 26186)

Lavery, C. J., and Gruendel and Peters, Js.

Argued September 27—officially released December 27, 2005

*Donald M. Longley*, pro se, with whom was *Richard K. Greenberg*, pro se, the appellants (plaintiffs).

*Richard D. O'Connor*, with whom, on the brief, was *Glenn A. Duhl*, for the appellee (defendant).

*Opinion*

PETERS, J. This is a case of statutory interpretation. In a series of interlocking statutes, our legislature has recognized that, at the time of their retirement from state service, state employees are entitled to compensation for accrued, unused vacation time and to longevity payments. In this case, we must decide in what manner the legislature intended these entitlements to be reflected in retirement income.

General Statutes § 5-162 (a), a portion of the State Employees Retirement Act, provides that "[t]he retirement income for which a member is eligible shall be determined from his retirement date, years of state service and base salary . . . ." As defined by General Statutes § 5-162 (b) (2), "base salary" is the average annual salary received by a retiree for his three highest-paid years of state service.[1] Annual salary is defined by General Statutes § 5-154 (h) as any payment for state service, including longevity payments and payments for accrued vacation time.[2] " '[S]tate service' includes a period equivalent to accrued vacation time for which payment is made under section 5-252." General Statutes § 5-154 (m) (6).[3]

The issue in this case is whether, in the calculation of retirement income, accrued vacation time and longevity payments should be counted as additions to "state service" or as additions to "base salary." The trial court agreed with the defendant state employees retirement commission (commission) that they should be deemed to be additions to state service. We disagree. Accordingly, we reverse the judgment of the trial court.

---

[1] General Statutes § 5-162 provides in relevant part: "(a) The retirement income for which a member is eligible shall be determined from his retirement date, years of state service and base salary . . . .

"(b) As used in this section . . . (2) . . . 'base salary' means the average covered earnings received by a member for his three highest-paid years of state service . . . and 'covered earnings' means the annual salary, as defined in subsection (h) of section 5-154, received by a member in a year, limited by one hundred thirty per cent of the average of the two previous years' covered earnings. . . ."

[2] General Statutes § 5-154 (h) provides in relevant part: " 'Salary' means (1) any payment, including longevity payments and payments for accrued vacation time under section 5-252, for state service made from a payroll submitted to the Comptroller . . . ."

[3] General Statutes § 5-154 (m) provides in relevant part: " 'State service' is service with the state, either appointive or elective, for which a salary is paid, subject to the following rules . . . (6) 'state service' includes a period equivalent to accrued vacation time for which payment is made under section 5-252 . . . ."

The record reveals the following undisputed facts and procedural history. Pursuant to the 2003 Early Retirement Incentive Program; Public Acts 2003, No. 03-02; the plaintiffs, former assistant attorneys general Richard K. Greenberg and Donald M. Longley, retired from active employment with the state on June 1, 2003. Each retired as a vested Tier I, Plan B member of the state employees retirement system. Accordingly, the act and related statutes govern the calculation of their retirement benefits.

Pursuant to § 5-162, a retiree's income, for retirement purposes, is determined by his average covered earnings for his three highest paid years of state service. The plaintiffs' three highest paid years of state service were June 1, 2000, through May 31, 2001; June 1, 2001, through May 31, 2002; and June 1, 2002, through May 31, 2003.[4]

During each of these years, the plaintiffs received two longevity payments, and, subsequent to retirement, each plaintiff also received payment for his accrued but unused vacation time and a final, prorated longevity payment.[5] When they retired, their accrued vacation time also was recognized for a second purpose, as state service, in addition to their actual state service of more than thirty years.[6] See General Statutes § 5-154 (m) (6).

---

[4] These twelve month periods coincide with the last three years of each plaintiff's actual service with the state.

[5] Longevity payments and payments for accrued vacation are authorized by the State Personnel Act, General Statutes § 5-193 et seq. Specifically, General Statutes § 5-213 (b) provides in relevant part that "semiannual longevity lump-sum payments shall be made on the last regular pay day in April and October of each year, except that a retired employee shall receive, in the month immediately following retirement, a prorated payment based on the proportion of the six-month period served prior to the effective date of his retirement." General Statutes § 5-252 provides in relevant part that "[a]ny state employee leaving state service shall receive a lump sum payment for accrued vacation time. . . ."

[6] By virtue of the early retirement program, each plaintiff also was credited with an additional three years of service time.

In their pension applications, the plaintiffs asked for their base salaries to be calculated by including their longevity payments and their payments for accrued vacation time as part of their regular salary for their final year of state service. They recognized that this salary calculation might be subject to reduction if it resulted in an annual salary of more than 130 percent of the average of their two previous years' covered earnings. See General Statutes § 5-162 (b) (2). Apart from such a reduction, however, they maintained that their base salary should be calculated by including the vacation and longevity payments in their annual salary during the last year of state employment.

The commission denied the plaintiffs' prayers for relief. It assigned dispositive meaning to the temporal constraints imposed by §§ 5-162 and 5-154. In particular, it noted that "base salary . . . is the average salary received for the three highest paid *years of state service*" and that subsection (n) of § 5-154 defines a year of state service as twelve consecutive months.[7] According to the commission, a lump sum payment for accrued vacation time cannot be factored into the final year's salary directly, as the plaintiffs contend. To do so would impermissibly add *time* to the calculation of a retiree's three highest paid years of state service because, under § 5-154 (m), state service is defined as including "accrued vacation time," and, under § 5-154 (n), a year of state service can include only twelve calendar months.

The commission took the position, therefore, that compliance with the applicable statutory mandates requires recalculation of a retiree's final three years of service. This recalculation involves adding the number

---

[7] General Statutes § 5-154 (n) provides in relevant part: " 'Year of state service' means any period of twelve consecutive calendar months of state service, but no month shall be counted in more than one such year . . . ."

of months of service to which a retiree is entitled by virtue of his accrued vacation time to the final year of his state employment, at his then prevailing salary, and subtracting the same number of months of service at the beginning of the three year period of state employment, presumably at a lower salary. In the view of the commission, this methodology gives the plaintiffs the benefit of credit for their accrued vacation time and longevity without impairing the underlying time constraints that it views as embedded in the structure of the retirement program.

Because the plaintiffs disagreed with the commission's compensation formula, each of them filed a petition for a declaratory ruling challenging the commission's formula and requesting recalculation of his benefits.[8] The trial court dismissed the plaintiffs' administrative appeal. The plaintiffs then filed the present appeal with this court.

In their appeal to this court, the plaintiffs seek plenary review of the declaratory ruling issued by the commission and upheld by the trial court. In their view, the trial court (1) improperly deferred to the commission's declaratory ruling and (2) improperly affirmed the commission's calculation of their "base salary." The proper construction of § 5-162 raises a novel question of law on which the existing precedents give little guidance. We are persuaded, however, that the plaintiffs should prevail, and, therefore, we reverse the judgment of the trial court.

I

STANDARD OF REVIEW

The first issue in this appeal is whether the trial court applied the proper standard of review in its analysis of

---

[8] For the purposes of this appeal, the separate petitions for declaratory ruling filed by each plaintiff, and the separate declaratory rulings issued to each plaintiff are identical.

the commission's declaratory ruling. The parties agree that, because there was no evidentiary dispute, the petitions for a declaratory ruling raise pure questions of law. The parties also agree that the legal question with which the commission was presented has not been previously examined by a court.

The plaintiffs claim, however, that the trial court, instead of reviewing these legal issues de novo, improperly afforded deference to the commission's conclusions of law. In dismissing the plaintiffs' appeal, the trial court relied not only on its own interpretation of the act, but also on the unanimity of the commission's interpretation and its long-standing and consistent application of that interpretation. We agree with the plaintiffs that the court should have examined the issues independently.

Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. See General Statutes § 4-183 (j).[9] "Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding

---

[9] General Statutes § 4-183 (j) provides: "The court shall not substitute its' judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 137, 778 A.2d 7 (2001).

Concededly, the construction and application of §§ 5-162 (b) and 5-154 (h) present issues of law not heretofore considered by the courts. Under these circumstances, the plaintiffs are entitled to plenary review of the claims they raised at trial. See, e.g., *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 474, 881 A.2d 259 (2005).

## II

## CONSTRUCTION OF GENERAL STATUTES §§ 5-162 AND 5-154

Under § 5-162 (a), retirement income is determined by "years of state service" and "base salary." The principal issue in this case is whether, subject only to the 130 percent salary cap imposed by § 5-162 (b), the full dollar value of accrued vacation and final longevity payments received by a potential retiree should be added to "salary" received in the final year of state service for the purpose of calculating "base salary."

When interpreting a statute, we look first to its text to ascertain whether its meaning is plain. See General Statutes § 1-2z.[10] Although the parties would construe

---

[10] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

§ 5-162 differently, each maintains that the State Employees Retirement Act is clear and unambiguous. We find the web of statutory references and cross-references that inform the calculation of retirement pensions more problematic. To decide whether the commission's pension formula violates the statutory scheme of the act, "we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case. . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Lombardo's Ravioli Kitchen, Inc.* v. *Ryan*, 268 Conn. 222, 230–31, 842 A.2d 1089 (2004).

The trial court agreed with the commission that, although accrued vacation time and longevity payments are "salary," these payments cannot be added *directly* to the plaintiffs' annual salary for their final year of state service. In the commission's view, to do so would "add time" to that year beyond the twelve month limitation imposed by § 5-154 (n). This argument is premised on the applicability of § 5-154 (m) (6), which provides that " 'state service' includes *a period* equivalent to accrued vacation time for which payment is made under section 5-252 . . . ." (Emphasis added.) The commission argues that this additional "period" cannot simply be added at the end of a retiree's state service without running afoul of § 5-154 (n), which defines "year of state service" to mean "any period of twelve consecutive calendar months of state service, *but no month shall be counted in more than one year* . . . ." (Emphasis added.)

Accordingly, the commission has adopted a formula, which the court endorsed, that adjusted each plaintiff's

three highest paid years of state service to include the payment for and the temporal equivalent of his accrued vacation time and longevity payments and to subtract the same number of months and prior salary from the first of the last three years of his state service. Ordinarily, this formula is beneficial to retirees because it substitutes salary at the highest rate for salary at the third highest rate.

The court not only agreed with the logic of the commission's position but stated additional reasons for dismissal of the plaintiffs' appeal. It noted that the commission's decision was unanimous with respect to the present appeals and reflected a statutory interpretation of long standing. Finally, it doubted that the legislature would have intended to reward the failure to use vacation time with a substantial addition to a retirement pension.

The plaintiffs read the statutes differently. In their view, § 5-154 (m) is relevant to the calculation of "years of state service" in § 5-162 (a), but not to the calculation of "base salary." We agree. We find it significant that § 5-162 (b), which defines the operative terms of "base salary," does not include a cross reference to § 5-154 (m). It is also significant that, while the commission and the trial court take the view that accrued vacation payments and longevity payments should be treated alike, § 5-154 (m) does not refer to longevity payments.[11] Section 5-154 (m) cannot, therefore, be dispositive.

The only other statutory basis relied on by the commission for its formulaic attribution of service equivalents to the payments received by the plaintiffs is the

---

[11] At oral argument before the trial court, counsel for the commission made clear that the commission's treatment of the vacation and longevity payments was identical, stating "at the outset, let me make an observation on the issue of longevity payments and on the issue of vacation payment. There is no substantive difference in the analysis made for longevity payment. The same analysis [is] made for vacation."

reference to state service in the statutory definition of salary. Pursuant to § 5-154 (h), "salary" is "any payment, including longevity payments and payments for accrued vacation time . . . *for state service* . . . ." (Emphasis added.) According to the commission, this "plain language . . . demonstrates that state service includes longevity payments . . . ." We are not persuaded. The commission's interpretation results in the definition of salary subsuming and rendering superfluous the explicit definition of state service, provided by the legislature, in § 5-154 (m) (6).

The flaw in the commission's analysis is, however, more basic. The commission seems to take the position that, because § 5-154 (m) permits a retiree to use accrued vacation time to extend the length of his state service, accrued vacation time cannot be used for anything else. That is not what the statute says. Indeed, the commission does not deny that the plaintiffs in this case properly received both monetary payments and service credits as compensation for their unused vacation time. Similarly, subject to the 130 percent cap stated in § 5-162 (b), the plaintiffs are entitled to have their accrued vacation time factored into their retirement income.

We are equally unpersuaded by the trial court's reliance on the commission's rulings in this case because they reflect a unanimous policy of long standing.

Although the commission is persuaded that its calculation of retirement income properly reflects accrued vacation time while simultaneously "ensur[ing] that [only] the three highest paid years of state service are captured and averaged," at best, its reading of the governing statutory provisions is highly technical. The adoption of a commission policy that depends on a reading of a statute that is hypertechnical would better have been manifested by promulgating a regulation that

would have given notice to potential retirees of the commission's view of unused vacation time. With notice, the commission might have been asked, for example, to consider the significance of the fact that, for those state employees who receive no raises during their three highest paid years, the commission's policy would have provided no benefit under § 5-154 (h) for vacation time accruals.

The decision of the commission and the judgment of the trial court reflect concern with the propriety of a public policy that encourages a state employee to accrue significant periods of unused vacation time. As previously noted, each of the plaintiffs has a statutory right to receive credit for such accrued vacation time by a direct payment and by additions to their service time. As we construe § 5-162, they also have a statutory right to factor accrued vacation time into their retirement income. Perhaps the legislature should rethink this policy. It is not in our province to do so.

The judgment is reversed and the case is remanded with direction to remand the matter to the commission for recalculation of the plaintiffs' retirement income.

In this opinion the other judges concurred.