## DONALD M. LONGLEY ET AL. *v.* STATE EMPLOYEES RETIREMENT COMMISSION
### (SC 17617)

Borden, Norcott, Palmer, Vertefeuille and Sheldon, Js.*

* The listing of justices reflects their seniority status as of the date of oral argument.

Argued November 20, 2006—officially released October 2, 2007

*Daniel J. Klau,* with whom was *Richard F. Wareing* and, on the brief, *Joseph J. Chambers,* for the appellant (defendant).

*Donald M. Longley,* pro se, with whom was *Richard K. Greenberg,* pro se, the appellees (plaintiffs).

PALMER, J. Under the State Employees Retirement Act (act), General Statutes § 5-152 et seq., state employees who retire after ten or more years of state service are entitled to retirement income based on the length of their state service and their "base salary," which is defined as the average annual salary that a retiree receives in his three highest paid years of state service. This certified appeal requires us to decide whether, under General Statutes §§ 5-162[1] and 5-154,[2] the dollar value of a lump sum payment to a state retiree for accrued, unused vacation time[3] and the dollar value of the retiree's final, prorated longevity payment[4] must be

---

[1] General Statutes § 5-162 provides in relevant part: "(a) The retirement income for which a member is eligible shall be determined from his retirement date, years of state service and base salary . . . .

"(b) As used in this section . . . (2) . . . 'base salary' means the average covered earnings received by a member for his three highest-paid years of state service . . . and 'covered earnings' means the annual salary, as defined in subsection (h) of section 5-154, received by a member in a year, limited by one hundred thirty per cent of the average of the two previous years' covered earnings. . . ."

[2] General Statutes § 5-154 provides in relevant part: "For the purposes of [chapter 66 of the General Statutes] . . .

"(h) 'Salary' means (1) any payment, including longevity payments and payments for accrued vacation time under section 5-252, for state service made from a payroll submitted to the Comptroller . . . .

"(m) 'State service' is service with the state, either appointive or elective, for which a salary is paid, subject to the following rules . . . (6) 'state service' includes a period equivalent to accrued vacation time for which payment is made under section 5-252 . . . .

"(n) 'Year of state service' means any period of twelve consecutive calendar months of state service, but no month shall be counted in more than one such year . . . ."

[3] General Statutes § 5-252 provides: "Any state employee leaving state service shall receive a lump sum payment for accrued vacation time as prescribed under rules and regulations to be promulgated by the Commissioner of Administrative Services, which rules and regulations shall be approved by the Secretary of the Office of Policy and Management."

[4] General Statutes § 5-213 (a) provides in relevant part: "[E]ach employee in the state service who has completed not less than ten years of state service and who is not included in any collective bargaining unit, except those employees whose compensation is prescribed by statute, shall receive

added directly to the salary that the retiree earned in his final year of state employment for the purpose of calculating his "base salary." The defendant, the state employees retirement commission (commission), appeals from the judgment of the Appellate Court, claiming that that court incorrectly concluded that both the accrued vacation time payment and final longevity payment must be added to the annual salaries of the plaintiffs, Donald M. Longley and Richard K. Greenberg, in their final year of employment for the purpose of calculating their base salaries. We agree with the Appellate Court's treatment of the plaintiffs' final longevity payments but disagree with the Appellate Court's treatment of the plaintiffs' accrued vacation time payments. We therefore affirm in part and reverse in part the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following undisputed facts and procedural history. "Pursuant to the 2003 Early Retirement Incentive Program; [see] Public Acts 2003, No. 03-02 [§ 6]; the plaintiffs, [both of whom are] former assistant attorneys general . . . retired from active employment with the state on June 1, 2003.[5] Each retired as a vested Tier I, Plan B member of the state employees retirement system. Accordingly, the act and related statutes govern the calculation of their retirement benefits.

semiannual lump-sum longevity payments based on service completed as of the first day of April and the first day of October of each year . . . ."

General Statutes § 5-213 (b) provides: "The semiannual longevity lump-sum payments shall be made on the last regular pay day in April and October of each year, except that a retired employee shall receive, in the month immediately following retirement, a prorated payment based on the proportion of the six-month period served prior to the effective date of his retirement."

[5] Greenberg retired after 33 years, 3 months and 4 days of employment with the state. Longley retired after 33 years, 3 months and 11 days of state employment. Both plaintiffs also received additional credit for three years of state service pursuant to the 2003 Early Retirement Incentive Program.

"Pursuant to § 5-162, a retiree's income, for retirement purposes, is determined by his average covered earnings for his three highest paid years of state service. The plaintiffs' three highest paid years of state service were June 1, 2000, through May 31, 2001; June 1, 2001, through May 31, 2002; and June 1, 2002, through May 31, 2003.

"During each of these years, the plaintiffs received two longevity payments, and, subsequent to retirement, each plaintiff also received payment for his accrued but unused vacation time and a final, prorated longevity payment.[6] When [the plaintiffs] retired, their accrued vacation time also was recognized for a second purpose, as state service, in addition to their actual state service of more than thirty years. See General Statutes § 5-154 (m) (6).

"[Prior to their retirement date, the plaintiffs filed separate petitions for declaratory ruling in which they asked the commission to calculate their base salaries by adding the dollar value of their accrued vacation time and their final, prorated longevity payments directly to their regular salaries earned in their final year of employment.] They recognized that this salary calculation might be subject to reduction if it resulted in an annual salary of more than 130 percent of the average of their two previous years' covered earnings. See General Statutes § 5-162 (b) (2). Apart from such a reduction, however, [the plaintiffs] maintained that their base salary should be calculated by including the vacation and longevity payments in their annual salary during [their] last year of state employment.

---

[6] Longley accrued 120 days of unused vacation time for which he received a lump sum payment of $53,183.04. Greenberg accrued approximately 97 days of unused vacation time for which he received a lump sum payment of $42,954.17. Each of the plaintiffs also received a final, prorated longevity payment of approximately $1150.

"The commission [unanimously] denied the plaintiffs' prayers for relief.[7] It assigned dispositive meaning to the temporal constraints imposed by §§ 5-162 and 5-154. In particular, it noted that 'base salary . . . is the average salary received for the three highest paid *years of state service*' and that subsection (n) of § 5-154 defines a year of state service as twelve consecutive months. According to the commission, a lump sum payment for accrued vacation time cannot be factored into the final year's salary directly, as the plaintiffs contend. To do so would impermissibly add *time* to the calculation of a retiree's three highest paid years of state service because, under § 5-154 (m), state service is defined as including 'accrued vacation time,' and, under § 5-154 (n), a year of state service can include only twelve calendar months.[8]

---

[7] We note that the plaintiffs' petitions for declaratory ruling, as well as the declaratory rulings themselves, are identical in all material respects.

[8] Specifically, with respect to Longley's claim, the commission explained: "Exclusive of the [three] additional years [that Longley] received under the [2003 Early Retirement Incentive Program], [he] has 33 years, 3 months of state service and 5 months of accrued vacation time for which he received payment, for a total of 33 years, 8 months of state service. [Longley's] final twelve months of salary are among his three highest paid years; by adding the lump sum vacation payment for the [five] months of service to his final year there would exist a total of [seventeen] months of salary. Thus by doing as [Longley] proposes, and adding the lump sum payment to his final year of state service, the result would be averaging a [seventeen] month period of state service . . . rather than a [twelve] month period. This outcome is clearly prohibited by statute.

"The lump sum vacation payment cannot merely be added to the salary for the final year of state service . . . [because] it represents time; it is by definition state service. Any one year of state service is twelve months and no more. If [Longley's] interpretation were adopted, the base salary from which retirement income is derived would consist of an average salary not for the three highest paid years of state service, but for the three highest paid years plus the equivalent period of vacation time."

The commission applied a similar analysis to Longley's final, prorated longevity payment, explaining as follows: "In any given twelve month period, an eligible employee, pursuant to [General Statutes §] 5-213, is entitled to two lump sum longevity payments. Assuming an employee received longevity lump sum payments in each of his three highest paid years, the computation would include the averaging of six payments. If the prorated longevity

"The commission took the position, therefore, that compliance with the applicable statutory mandates requires recalculation of a retiree's final three years of service. This recalculation involve[d] adding the [dollar value of the] number of months of service to which a retiree is entitled by virtue of his accrued vacation time to the final year of his state employment, at his then prevailing salary, and subtracting the [dollar value of the] same number of months of service at the beginning of the three year period of state employment, presumably at a lower salary.[9] In the view of the commission, this methodology [gave] the plaintiffs the benefit of credit for their accrued vacation time . . . without impairing the underlying time constraints that it view[ed] as embedded in the structure of the retirement program."[10] (Emphasis in original.) *Longley* v. *State Employees Retirement Commission*, 92 Conn. App. 712, 715–17, 887 A.2d 904 (2005).

payment received by the retired employee were added to the final year of salary, it would result in averaging more than six longevity payments or more than three years' worth. Again, this result would violate the express statutory mandate that the base salary consist of the three highest paid years of state service. The commission's computation method as it is performed on the retirement application captures the three highest paid years of salary, including the appropriate number of longevity payments. The computation portion of the application relating to the longevity payments results in an adjustment only when there has been an increase in the longevity rate amount during the three highest paid years of state service."

The commission used the same reasoning in rejecting Greenberg's petition for declaratory ruling.

[9] "Ordinarily, this formula is beneficial to retirees because it substitutes salary at the highest rate for salary at the third highest rate." *Longley* v. *State Employees Retirement Commission*, 92 Conn. App. 712, 721, 887 A.2d 904 (2005).

[10] We note that the average annual salary that each of the plaintiffs received for their three highest paid years of state service, as calculated by the commission, was approximately $123,900. Under the calculation that the plaintiffs claim is mandated by the act, they each would be entitled to retirement income of approximately $99,700 per year. Under the commission's calculation, each of the plaintiffs would be entitled to annual retirement income of approximately $90,600.

In rejecting the claim that the plaintiffs' final, pro-rated longevity payments must be added to their salaries in their final year for the purpose of calculating their base salaries, the commission relied primarily on General Statutes § 5-213, which provides that a state employee is entitled to two lump sum longevity payments each year. The commission reasoned that adding the retiree's final, prorated longevity payment directly to the retiree's salary in his final year would be inconsistent with § 5-213 because that final prorated payment would represent a third longevity payment that the retiree would receive in a twelve month period. The commission further stated that the interpretation of the act that the plaintiffs advocated "would violate the express statutory mandate that the base salary consist of the three highest paid years of state service."

The plaintiffs appealed from the declaratory rulings of the commission to the trial court,[11] which concluded that the commission's formula for computing retirement income was compelled by the plain language of the act. The trial court further explained that, even if the statutory scheme could be characterized as ambiguous, there were several considerations that supported the

---

[11] The plaintiffs appealed from the commission's declaratory rulings pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. General Statutes § 4-183 (j), which sets forth the scope of review on appeal under UAPA, provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

interpretation advanced by the commission. First, the trial court noted that the commission's formula took into account all of the provisions of the complex statutory scheme, whereas the plaintiffs' interpretation "ignore[d] the full logical implications of § 5-154 (m), which provides that state service includes *a period equivalent to accrued vacation time.*" (Emphasis in original.) In other words, as the Appellate Court explained, "[t]he trial court agreed with the commission that, although accrued vacation time and longevity payments are salary, these payments cannot be added *directly* to the plaintiffs' annual salar[ies] [in] their final year of state service. In the [view of the trial court and the commission], to do so would add time to that year beyond the twelve month limitation imposed by § 5-154 (n). This [view] is premised on the applicability of § 5-154 (m) (6), which provides that state service [shall include] *a period* equivalent to accrued vacation time for which payment is made under [General Statutes §] 5-252 . . . . The commission [argued, and the trial court agreed] that this additional period cannot simply be added at the end of a retiree's state service without running afoul of § 5-154 (n), which defines year of state service to mean any period of twelve consecutive calendar months of state service, but no month shall be counted in more than one year . . . ." (Emphasis in original; internal quotation marks omitted.) *Longley* v. *State Employees Retirement Commission,* supra, 92 Conn. App. 720. In essence, therefore, the trial court concluded that the plaintiffs' interpretation of the statutory scheme failed to account for the statutory requirement that retirement income be calculated on the basis of the retiree's three highest paid years, *not* the three highest paid years *plus* the additional period attributable to any accrued, unused vacation time.

Second, the trial court concluded that the commission's interpretation was entitled to "some consider-

ation" because the commission has been designated by the legislature to compute retirement income, and it has been doing so in a manner consistent with its declaratory rulings in the present case for a significant period of time. Finally, the trial court concluded that the commission's interpretation avoided the "bizarre results" that flowed from the approach advanced by the plaintiffs, namely, that two similarly situated retirees, one of whom has used all of his vacation time prior to retiring and one of whom has accumulated the maximum amount of unused vacation time, would be entitled to grossly disparate annual retirement benefits.[12] The

[12] By way of illustration, the trial court offered the following hypothetical: "Suppose an employee's salary was $50,000 in year 1, $51,000 in year 2 and $52,000 in year 3. Suppose that years 1, 2 and 3 are the three highest paid years of state service (before any period attributable to accrued vacation time is added in). Before the additional payments are considered, the average would be $51,000, and the pension would be computed accordingly.

"Now, leaving aside for the moment the issue of longevity payments, suppose that a payment of $13,000 is made in the month following retirement for accrued vacation time and . . . based on the daily rate of pay at the time of retirement, that amount corresponds to three months of salary. The plaintiffs would add the $13,000 to the final year's salary, such that the recomputed amount for year 3 would be $65,000. (Because $65,000 is less than 130 percent of the average of years 1 and 2, it does not have to be adjusted downward). The recomputed average salary would be $56,000. If the pension were paid at a 70 percent rate, then the yearly pension would be $39,200 yearly.

"The commission would account for the payment for accrued vacation time differently. It would adjust the years forward, taking into account the statutory language which includes in 'state service' periods equivalent to the accrued vacation time. Because the $13,000 [figure] in [the foregoing] example correspond[s] to three months of employment, year 3 is extended by three months for computation purposes. Because the accrued vacation time is computed according to the last salary rate, the payment for year 3 is still $52,000. Payment for year 2 is adjusted somewhat upward: Nine months is at the rate of $51,000, but three months is at the $52,000 rate, which is included in year 2 because of the forward shift. Recomputed salary for year 2, then, is $51,250. The amount attributed to year 1 is computed similarly: Nine months at the rate of $50,000 per year is $37,500, and three months at the rate of $51,000 is $12,750. The recomputed rate for year 1 is, therefore, $50,250. The average for the three highest paid years becomes $51,166.67. The [annual] pension [income], again at 70 percent, would be $35,816.67.

trial court observed that it was not likely that the legislature "intended to reward, to the tune of [$9000] a year in [each of] the [plaintiffs' cases], a practice of not taking vacation days. Vacation presumably benefits both the employee and the employer, and it seems odd . . . that a unilateral choice might result in . . . such a windfall. . . . Stated conversely, a long-term employee who [takes] his vacation would be sorely penalized for doing so, and [it is] doubt[ful] that this is the policy intended by the legislature." The trial court therefore rendered judgment dismissing the plaintiffs' administrative appeal.

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, which concluded that the act required the commission to treat the value of the plaintiffs' accrued vacation time and their final, prorated longevity payments as regular salary earned in their final year of employment, without any adjustment to the beginning of the three year period of highest earnings. See *Longley* v. *State Employees Retirement Commission*, supra, 92 Conn. App. 717, 719–23. As a preliminary matter, the Appellate Court expressed its disagreement with the trial court that the commission's interpretation of the act was entitled to deference. See id., 718. The Appellate Court concluded, instead, that, to the extent that the trial court had relied on the commission's interpretation of the act, such reliance was unwarranted because the issue presented was one of law for which de novo appellate review was appropriate. Id., 718–19.

With respect to the merits of the parties' arguments, the Appellate Court concluded that there was no statutory basis for the commission's practice of attributing

"This example replicates fairly accurately the plaintiffs' financial situation, except that the figures in the plaintiffs' cases are greater than the example by a factor of [between two and] three."

actual service equivalents to a retiree's accrued vacation time. Rather, the Appellate Court agreed with the plaintiffs that General Statutes § 5-154 (m) (6), which provides that " 'state service' includes a period equivalent to accrued vacation time," is relevant only to the calculation of a retiree's total years of state service under § 5-162 (a), and not to the calculation of his base salary under § 5-162 (b). Id., 721. In so concluding, the Appellate Court reasoned that, if the legislature had intended for accrued vacation time to be treated as state service under § 5-162 (b), that statutory subsection would have cross-referenced § 5-154 (m). Id. The Appellate Court further explained that, although both the commission and the trial court had expressed the view that accrued vacation payments and longevity payments should be treated alike, § 5-154 (m) does not refer to longevity payments. Id.

The Appellate Court also noted that, "[a]lthough the commission [was] persuaded that its calculation of retirement income properly reflect[ed] accrued vacation time while simultaneously 'ensur[ing] that [only] the three highest paid years of state service [were] captured and averaged,' at best, its reading of the governing statutory provisions [was] highly technical. The adoption of a commission policy that depend[ed] on a reading of a statute that is hypertechnical would better have been manifested by promulgating a regulation that would have given notice to potential retirees of the commission's view of unused vacation time. With notice, the commission might have been asked, for example, to consider the significance of the fact that, for those state employees who receive no raises during their three highest paid years, the commission's policy would have provided no benefit under § 5-154 (h) for vacation time accruals." Id., 722–23.

Finally, the Appellate Court acknowledged that its construction of the relevant statutory language re-

flected "a public policy that encourages a state employee to accrue significant periods of unused vacation time." Id., 723. Although the Appellate Court suggested that the legislature might wish to "rethink" this policy, it concluded that "[i]t is not in our province to do so." Id. Accordingly, the Appellate Court reversed the judgment of the trial court and directed that court to remand the case to the commission for recalculation of the plaintiffs' retirement income in accordance with the approach advocated by the plaintiffs. Id.

We granted the commission's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that, in the calculation of retirement income, pursuant to the [act], [the value of] accrued vacation time and longevity payments should be counted as additions to 'base salary'?" *Longley* v. *State Employees Retirement Commission*, 277 Conn. 914, 895 A.2d 789 (2006). On appeal to this court, the commission first contends that, under well established principles, the Appellate Court was obliged to defer to the commission's long-standing interpretation of the relevant statutory provisions. The commission further claims that the Appellate Court incorrectly construed those provisions and that the formula used by the commission to calculate the plaintiffs' retirement income accorded fully with the dictates of the act. We need not decide whether the commission's interpretation of the act was entitled to deference because we conclude that, irrespective of whether such deference was appropriate, the Appellate Court improperly rejected the commission's treatment of the plaintiffs' accrued vacation time payments but properly rejected the commission's treatment of the plaintiffs' final, prorated longevity payments.

I

As an initial matter, and for purposes of clarifying our law in this area, we address the issue of when

an agency's interpretation of a statute is entitled to deference. In the present case, the parties disagree as to whether the factual record is sufficiently clear to permit such a determination. We need not resolve the parties' dispute, however, because our determination of this appeal does not hinge on the issue of deference. Nevertheless, because the opinion of the Appellate Court arguably may create some confusion as to the proper standard to apply in determining when agency deference is appropriate, we address that issue before reaching the merits of the parties' claims.

As we frequently have stated, "[a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . *Connecticut Light & Power Co.* v. *Texas-Ohio Power, Inc.*, 243 Conn. 635, 642, 708 A.2d 202 (1998); [see also] *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 137, 778 A.2d 7 (2001). We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390, 709 A.2d 1116 (1998); accord *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 121, 742 A.2d 1257 (2000) (government agency's reasonable, time-tested interpretation should be accorded great weight by the courts); *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 719, 546 A.2d 830 (1988) (deference to . . . time-tested agency interpretation of

a statute, but only when the agency has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable). Consequently, an agency's interpretation of a statute is accorded deference when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable. Cf. *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, supra, 390 n.18 (finding no deference warranted to agency interpretation when agency had failed to make public declaration of interpretation and had applied interpretation for only four years)." (Internal quotation marks omitted.) *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 261–63, 788 A.2d 60 (2002).

Thus, in *Hartford Municipal Employees Assn.*, we concluded that, because the state board of labor relations reasonably had interpreted a certain provision of the Municipal Employees Relations Act in the same manner for more than twenty-five years, that construction was entitled to a deferential standard of appellate review. See id., 268–69, 274. In reaching our conclusion, we explained: "[S]uch deference is warranted because a time-tested interpretation, like judicial review, provides an opportunity for aggrieved parties to contest that interpretation. Moreover, in certain circumstances, the legislature's failure to make changes to a long-standing agency interpretation implies its acquiescence to the agency's construction of the statute." Id., 262 n.14. For these reasons, this court long has adhered to the principle that when a "governmental agency's time-tested interpretation [of a statute] is reasonable it should be accorded great weight by the courts." (Internal quotation marks omitted.) *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 493, 362 A.2d 785 (1975); see

also *Anderson* v. *Ludgin,* 175 Conn. 545, 555–56, 400 A.2d 712 (1978).

In concluding that the commission's interpretation of the act was not entitled to deference, the Appellate Court ignored this line of cases and, instead, relied on certain other cases in which this court has used language that might be construed to suggest that courts should give deference to an agency's interpretation of a statute *only* when the statute previously has been subjected to judicial scrutiny. See *Szewczyk* v. *Dept. of Social Services,* 275 Conn. 464, 474, 881 A.2d 259 (2005) ("the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement" is not followed "when a state agency's determination of a question of law has not previously been subject to judicial scrutiny" [internal quotation marks omitted]); *MacDermid, Inc.* v. *Dept. of Environmental Protection,* supra, 257 Conn. 137 ("when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference" [internal quotation marks omitted]). Recently, however, in *Hartford* v. *Hartford Municipal Employees Assn.,* supra, 259 Conn. 251, we sought to clear up any confusion that might have resulted from our cases, such as those on which the Appellate Court relied; see *Longley* v. *Connecticut State Employees Retirement Commission,* supra, 92 Conn. App. 718–19; in which we had omitted any reference to the rule that accords deference to an agency interpretation that is both reasonable and long-standing. We explained: "To the extent that this court's prior decisions could be read to limit . . . such deference to only those circumstances in which the statute has been subject to judicial review, we reject such an interpretation. First, we note that the records in those cases do not indicate that the agency consistently had applied, over an extended

period of time, a particular statutory interpretation. See, e.g., *MacDermid, Inc.* v. *Dept. of Environmental Protection,* supra, [128]; *Starr* v. *Commissioner of Environmental Protection,* 236 Conn. 722, 736, 675 A.2d 430 (1996). Second, such an interpretation would be inconsistent with our reasoning in *Office of Consumer Counsel* v. *Dept. of Public Utility Control,* supra, 252 Conn. 121, [in which] we determined that plenary review should be applied only after noting that the issue of law had not been time-tested by the department [of public utility control] or previously considered by the courts." *Hartford* v. *Hartford Municipal Employees Assn.,* supra, 262 n.13. We take this opportunity to reaffirm the principle that courts should accord deference to an agency's formally articulated interpretation of a statute when that interpretation is both time-tested and reasonable.

In the present case, the commission has asserted that it has used the same formula since 1969 for purposes of accounting for longevity and accrued vacation payments in the calculation of retirement income under the act.[13] The commission further asserts that it has applied that formula in calculating the retirement income of thousands of retirees. Finally, the commission represents that the manner in which it has treated accrued vacation time payments for the purpose of calculating retirement income "has been apparent on the face of retirement applications for decades." The plaintiffs, however, do not concede the accuracy of these assertions and maintain that the commission has failed to establish with sufficient definiteness when it first began to use the formula and the extent to which

---

[13] Although the record of the trial court proceedings may be read as containing an assertion by commission counsel that the commission has used the formula since 1969, that assertion is less than clear. As far as we can tell, the commission did not reassert that point in the Appellate Court. The commission did make that factual claim, however, in its petition for certification to appeal and in its briefs and argument before this court.

the formula has been formally articulated. We need not resolve this dispute because we conclude, for the reasons that we set forth hereinafter, that, irrespective of whether the commission's interpretation of the act is entitled to deference, the Appellate Court improperly rejected the commission's treatment of payments for accrued vacation time and properly rejected the commission's treatment of longevity payments.

## II

The commission contends that the Appellate Court incorrectly determined that the value of the lump sum payment that a retiree receives for accrued vacation time, along with the value of the retiree's final, prorated longevity payment, must be added directly to the retiree's salary in his final year for the purpose of ascertaining his base salary. We address each of the commission's contentions in turn.

With respect to the treatment of accrued vacation time payments, the commission challenges the conclusion of the Appellate Court that, under § 5-154 (m), accrued vacation time is excluded in the calculation of the total length of a retiree's state service under § 5-162 (a), whereas the lump sum payment for accrued vacation time is included in the calculation of the retiree's salary in his last year of state service, for the purpose of computing his base salary under § 5-162 (b) (2). The commission contends that, by including that payment in the calculation of the retiree's base salary under § 5-162 (b) (2), the Appellate Court has ignored the temporal restriction of that statutory subdivision, which provides that only three years of state service shall be considered in the computation of base salary. In other words, the commission maintains that, by adding the value of any accrued vacation time to the retiree's salary in his final year, the Appellate Court effectively has extended the period of state service on

which the retiree's base salary is predicated beyond the statutorily mandated period of three years. We agree with the commission.

"[I]n construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter."[14] (Internal quotation marks omitted.) *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998).

For several reasons, we conclude that the pertinent provisions of the act manifest a legislative intent that accrued vacation time payments are not to be added directly to a retiree's salary in his final year for the purpose of determining his base salary. In particular, we agree with the commission that the Appellate Court incorrectly determined that such time is not treated as state service in the calculation of base salary under § 5-162 (b). General Statutes § 5-154 provides in relevant part that, "[f]or the purposes of [chapter 66 of the General Statutes] . . . (m) '[s]tate service' is service with the state, either appointive or elective, for which a sal-

[14] We note that, under General Statutes § 1-2z, we may not rely on extratextual evidence of the meaning of a statute if, after examining its text and other related statutory provisions, that text is plain and unambiguous and does not yield absurd or unworkable results. Although we conclude that the language of the pertinent statutory provisions supports the interpretation of those provisions advanced by the commission with respect to its treatment of accrued vacation time, we cannot say that the scheme is plain and unambiguous. See *Longley* v. *State Employees Retirement Commission*, supra, 92 Conn. App. 719–20 ("Although the parties would construe § 5-162 differently, each maintains that the . . . act is clear and unambiguous. We find the web of statutory references and cross-references that inform the calculation of retirement [income] more problematic.").

ary is paid, subject to the following rules . . . (6) 'state service' includes a period equivalent to accrued vacation time for which payment is made under [§] 5-252 . . . ." Section 5-154 (m) makes no distinction between the meaning of "state service" for the purpose of calculating length of service under § 5-162 (a) and for the purpose of calculating base salary under § 5-162 (b) (2), and we see no reason why the legislature would have intended to draw such a distinction. Moreover, as the commission notes, the act is replete with express awards of credit for the limited purpose of extending the length of a retiree's state service. E.g., General Statutes § 5-175a (b) (authorizing state retiree to receive credit for prior years of service as operator of vending stands in public buildings); General Statutes § 5-176 (authorizing state service "credit for retirement purposes" for prior public school service); General Statutes § 5-177 (authorizing credit for certain retirees for out-of-state or foreign service to educational institutions); General Statutes § 5-180 (authorizing state service credit for prior military service); General Statutes § 5-181 (a) (authorizing credit for prior state service for "[a] member who has been in state service for some past period or periods not otherwise credited for retirement purposes"); General Statutes § 5-181a (authorizing for certain retirees credit for service with federal government); General Statutes § 5-183 (authorizing state service credit for transferred county employees). We may assume, therefore, that if the legislature had intended for accrued vacation time to be treated in a similar manner, that is, as a credit to state service and nothing more, it would have expressed that intent explicitly.[15]

[15] As we noted previously, the Appellate Court, in support of its rejection of the commission's formula for computing retirement income, observed that General Statutes § 5-162 (b) (2), which defines " 'base salary' " as "the average covered earnings received by a member for his three highest-paid years of state service," does not include a cross-reference to General Statutes § 5-154 (m) (6), which provides that " 'state service' " shall include "a period equivalent to accrued vacation time for which payment is made under section 5-252 . . . ." See *Longley* v. *State Employees Retirement Commission*,

See, e.g., *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996) (when "a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed").

We next turn to General Statutes § 5-162 (a), which provides in relevant part that "[t]he retirement income for which a member is eligible shall be determined from his retirement date, years of state service and base salary . . . ." Under General Statutes § 5-162 (b) (2), " 'base salary' " is defined as "the average covered earnings received by a member for his three highest-paid years of state service," and " 'covered earnings' " is defined as "the annual salary, as defined in subsection (h) of section 5-154, received by a member in a year, limited by one hundred thirty per cent of the average of the two previous years' covered earnings." General Statutes § 5-154 (n) defines " '[y]ear of state service' " as "any period of twelve consecutive calendar months of state service, but no month shall be counted in more than one such year . . . ." Finally, under General Statutes § 5-154 (h), " '[s]alary' " includes "any payment, including longevity payments and payments for accrued vacation time . . . for state service made from a payroll submitted to the Comptroller . . . ." In view of our prior determination that accrued vacation time constitutes state service for the purpose of calculating base salary under § 5-162 (b) (2), we agree with the commission that adding a payment for accrued vacation time directly to a retiree's final year's salary, without any adjustment to the beginning of the three year period of

supra, 92 Conn. App. 721. We disagree that the absence of such a cross-reference is relevant to the resolution of the commission's claim. As we have indicated, the definitions contained in § 5-154 pertain to chapter 66, which includes § 5-162. Consequently, any cross-reference in § 5-162 (b) to § 5-154 (m) (6) would be superfluous.

highest earnings, would violate the directive of §§ 5-162 (b) and 5-154 (n) that the determination of retirement income shall be based on the retiree's *three* highest paid *years* of state service. Put differently, the Appellate Court's interpretation of the relevant statutes results in a calculation of retirement benefits that is predicated on an effective period of employment in excess of three years. By contrast, the formula that the commission has used to calculate retirement income, which, as we have explained, consists of adding the dollar value of the number of days of service to which a retiree is entitled by virtue of his accrued, unused vacation time to his salary in his final year of state employment, at his then prevailing salary, and then subtracting the dollar value attributable to the same number of days of service at the beginning of the three year period, presumably at a lower salary rate, comports with the requirements of the statutory scheme, including its temporal requirements.[16]

Our conclusion is buttressed by the fact that the Appellate Court's interpretation of the statutory scheme leads to a result that we do not believe the legislature had envisioned. It is a fundamental principle of statutory construction that courts must interpret statutes using common sense and assume that the legislature

---

[16] We disagree with the Appellate Court that, under the commission's formula for calculating retirement income, a state employee who does not receive a raise during his three highest paid years of state service also will receive no benefit for his accrued vacation time because that time will have no direct effect on the calculation of his base salary. See *Longley* v. *State Employees Retirement Commission*, supra, 92 Conn. App. 723. On the contrary, because accrued vacation time increases the length of a retiree's state service, such time also increases the percentage of base salary to which the retiree is entitled, which, in turn, increases the amount of retirement income to which he is entitled. See General Statutes § 5-162 (c). Moreover, we agree with the commission that, if an employee's salary remains constant over the last three years of his employment, it is perfectly reasonable that the employee's three year earnings average would be equivalent to his annual salary for each of those last three years of employment.

intended a reasonable and rational result. See, e.g., *Modern Cigarette, Inc.* v. *Orange*, 256 Conn. 105, 120, 774 A.2d 969 (2001). Under the interpretation advocated by the plaintiffs and adopted by the Appellate Court, each of the plaintiffs would receive approximately $9000 in additional annual retirement income solely because they elected not to use a substantial amount of their allotted vacation time.[17] Thus, over a twenty-five year period following retirement, each plaintiff would receive approximately $225,000 more in retirement bene-

---

[17] To underscore the unreasonableness of the plaintiffs' position, the commission offers the following example: "[A]ssume two state employees, A and B, have elected to retire. . . . A retires on December 31, 2004, having worked for exactly thirty years, and during his final three years of employment he earned, respectively, $100,000, $103,000 and $106,000. When . . . A retired, he had 120 days of accrued vacation time valued at $48,923. . . . B is identical in all respects, except that instead of formally retiring on December 31, 2004 . . . B takes his 120 days of accrued vacation time as paid vacation and, thus, does not formally retire until that time has been exhausted.

"Both employees are indistinguishable in terms of length of state service, annual salary and days worked. The only difference is that . . . A took his accrued vacation time as a lump sum payment upon his retirement, [whereas] . . . B opted to continue receiving regular paychecks while he was on vacation for the last 120 days prior to his retirement.

"Despite these facts, under the plaintiffs' and Appellate Court's interpretation of [the act] . . . A and B would receive significantly different retirement benefits. This is because, although both employees would have the same length of state service (thirty years plus 120 days) . . . A's accrued vacation time would be added directly to his final year of salary, thus increasing his three year earnings average to $111,650—more than he ever [had] earned in a single year during his entire career. . . . His annual retirement benefit would be $67,916.70. . . . By contrast, the three year earnings average of . . . B, having retired without any accrued vacation time, would be based solely on his actual salary during those years. His three year average would be $103,892.00, and his annual retirement benefit would be $63,252.25. . . . Thus, even though . . . A and B are similarly situated . . . A's retirement [income would be] approximately 7.3 [percent] greater than . . . B's [retirement income].

"[In contrast] [u]nder the commission's long-standing interpretation of [the act] . . . A and B are treated the same. The three year [average earnings] for both employees would be $103,892.00, and they would both receive annual retirement [income] of $63,252.25." (Citations omitted.)

fits than a coworker who retired at exactly the same salary as the plaintiffs and who was employed by the state for exactly the same length of time, but who used his vacation time instead of saving it.[18] Although there is no dispute that the plaintiffs are entitled to the significant lump sum payments that they already have received for their unused vacation time; see General Statutes § 5-252; we think it is highly unlikely that the legislature also intended to bestow a substantial annual windfall on them for the duration of their retirement—in essence, a lifetime annuity—merely because they chose to stockpile their vacation time rather than to use it.[19] This result penalizes workers who use their vacation days and rewards those who do not. Because there is no logical reason why the legislature would embrace such a policy, we will not lightly presume that it intended to do so. See, e.g., *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 407, 780 A.2d 903 (2001) ("[t]he unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation

[18] We also note that, in its petition for certification to appeal, the commission alleged that, on the basis of an analysis performed by an actuarial firm retained by the commission, the interpretation of the act adopted by the Appellate Court "may cost the state an additional $62 [to] $107 million per year in contributions to the state pension fund and could increase the state's unfunded pension liability by $800 million to $1.14 billion over the next quarter century." The plaintiffs challenge the accuracy of the commission's contention concerning the magnitude of any such increase in the state's pension liability.

[19] We note that the legislature amended § 5-162 (b) in 1983 by adding the 130 percent cap. Public Acts 1983, No. 83-533, § 8. Nevertheless, there is nothing in the legislative history of the 1983 amendment to suggest that the cap was intended to address accrued vacation time payments. On the contrary, to the extent that the pertinent legislative history sheds any light on the reason for the 130 percent cap, that history indicates that the legislature was concerned about the impact of overtime payments in an employee's three highest paid years on the calculation of retirement income. See Conn. Joint Standing Committee Hearings, Appropriations, Pt. 2, 1983 Sess., pp. 683–84.

in favor of another which would provide a result that is reasonable" [internal quotation marks omitted]).

We also must decide whether the commission's treatment of the plaintiffs' final, prorated longevity payments comports with the relevant statutory scheme. Under that scheme, an employee is entitled to six longevity payments in his final three years of employment. In contrast to accrued vacation time, however, the commission adds those six payments directly to the retiree's earnings in his three final years of employment. As the commission acknowledges, it treats longevity payments in this manner because, like accrued vacation time payments, longevity payments are defined as "covered earnings" for the purpose of calculating base salary under § 5-162 (b) (2), but, unlike accrued vacation time payments, longevity payments do not fall within the definition of "state service" under § 5-154 (m) and, consequently, do not have any temporal implications.

Nevertheless, the commission also performs an adjustment similar to the adjustment that it performs for the purpose of accrued vacation time payments because, according to the commission, such an adjustment is necessary to ensure that, in accordance with §§ 5-162 (b) (2) and 5-213, no more than six semiannual longevity payments are included in the three year period on which the determination of the plaintiffs' base salary is predicated.[20] In the commission's view, "[i]f the [final]

---

[20] The form application for retirement benefits that must be filed with the commission in advance of an employee's retirement reflects the commission's calculation with respect to the final, prorated longevity payment. For example, upon retirement, Longley was entitled to a prorated longevity payment equivalent to two months of service at his highest longevity payment rate during his three highest paid years of state service. Accordingly, because Longley's highest semiannual longevity payment was $3436, the commission added $1154.15, or approximately one third of $3436, to his three year earnings average for the purpose of calculating his base salary. The commission, however, then subtracted $1120.23 from that earnings average, an amount that represents the value of two months of longevity pay at Longley's lowest semiannual longevity payment rate of $3335 during his three highest paid years of state service.

prorated longevity payment received by the retired employee were added to the final year of salary, it would result in averaging more than six longevity payments or more than three years' worth [of payments] . . . [in violation of] the express statutory mandate that the base salary consist of the three highest paid years of state service." (Internal quotation marks omitted.) We conclude that the plaintiffs' final, prorated longevity payments must be added to their salary in their final year for the purpose of calculating their base salaries, and that neither § 5-213 nor § 5-162 (b) (2) supports a contrary conclusion.[21]

First, we agree with the plaintiffs that it is improper for the commission to treat their final, prorated longevity payments in a manner similar to their accrued vacation time payments because the former, unlike the latter, do not constitute "state service" within the meaning of § 5-162 (b) (2), and, therefore, there is no statutory basis for ascribing a temporal value to those payments. In other words, because a retiree's final, prorated longevity payment has no temporal value, adding it directly to the retiree's salary in his final year does not have the effect of extending the statutorily mandated three year period for calculating base salary. Consequently,

_____

[21] We note that the parties' dispute with respect to the proper treatment of final, prorated longevity payments in the calculation of base salaries implicates a significantly smaller amount in terms of annual retirement income than their dispute over the proper treatment of accrued vacation time payments. In the present case, for example, the plaintiffs contend that, with respect to their final, prorated longevity payments, they are entitled to have approximately $1150 more added to their salaries in their final year than under the formula that the commission used. After averaging the plaintiffs' salaries in their final year with the salaries they received for their prior two highest paid years of state service, and then multiplying those averages by individual percentages based on their total respective years of state service, the difference between the parties is a few hundred dollars. By contrast, the difference between the parties with respect to their dispute over the treatment of accrued vacation time payments is approximately $9000 annually for each plaintiff.

there is no justification under the act for the adjustment that the commission makes with respect to final, prorated longevity payments.

We also reject the commission's claim that adding the final, prorated longevity payment directly to a retiree's salary in his final year for the purpose of calculating base salary violates § 5-213. Semiannual, lump sum longevity payments, which are authorized by the State Personnel Act, General Statutes § 5-193 et seq., rather than the retirement act, "shall be made on the last regular pay day in April and October of each year, except that a retired employee shall receive, in the month immediately following retirement, a prorated payment based on the proportion of the six-month period served prior to the effective date of his retirement." General Statutes § 5-213 (b). Although the commission is correct that § 5-213 authorizes two longevity payments per year for any state employee who has completed more than ten years of state service, § 5-213 reasonably cannot be construed as *prohibiting* a retiree from receiving more than two longevity payments in his last year of state service prior to retirement. On the contrary, in addition to the April and October payments to which all qualifying employees are entitled, § 5-213 (b) expressly authorizes a *third* payment to a retiree based in amount[22] on the proportion of the six month period completed prior to the effective date of his retirement.

---

[22] A state employee's entitlement to longevity payments is based on the employee's reaching certain milestones in terms of total years of state service, on or before the dates on which entitlement to such payments vests. Longevity payments received after reaching such milestones are considered covered earnings in and for the year they are received even though only part of the total state service underlying entitlement to such payments occurred in the year of payment. The final longevity payment, like all other longevity payments, therefore must be considered covered earnings in and for the final year of the employee's state service because entitlement to such a payment vests at the very end of that year, at the moment of retirement.

Furthermore, even if we were to assume that § 5-213 may be interpreted as supporting the commission's contention that three longevity payments properly may not be included in the calculation of a retiree's salary in his final year, "[w]hen general and specific statutes conflict they should be harmoniously construed so the more specific statute controls." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 640–41, 799 A.2d 1034 (2002), quoting *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 654, 784 A.2d 323 (2001). As we previously have indicated, under General Statutes § 5-162 (b) (2), which governs the calculation of state employees' retirement benefits, " 'base salary' " is defined as "the average covered earnings received by a member for his three highest-paid years of state service . . . ." Under § 5-154 (h), in turn, "covered earnings" include all longevity payments. See General Statutes § 5-162 (b) (2) (" 'covered earnings' means the annual salary, as defined in subsection [h] of section 5-154, received by a member in a year"). Accordingly, to the extent that § 5-213 arguably may be construed to support the commission's contention that the final, prorated longevity payment cannot be added directly to a retiree's salary in his final year, any such construction must give way to the specific contrary import of §§ 5-162 (b) and 5-154 (h).

We conclude, therefore, that, in contrast to the manner in which the commission properly treats accrued vacation time payments, the formula that the commission uses to adjust final, prorated longevity payments for the purpose of calculating base salary is not supported by the statutory scheme.[23] As the plaintiffs contend, they are entitled to have their final, prorated

---

[23] Accordingly, because the commission's interpretation lacks statutory support, we would not endorse that interpretation even if it were entitled to deference.

longevity payments added directly to their salaries in their final year in the calculation of their base salaries.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of the trial court insofar as that court upheld the commission's treatment of the plaintiffs' accrued vacation time in the calculation of their retirement income; the judgment of the Appellate Court is affirmed insofar as it reversed the judgment of the trial court with respect to the commission's treatment of the plaintiffs' final, prorated longevity payments in the calculation of their retirement income.

In this opinion the other justices concurred.

---

* The listing of justices reflects their seniority status on this court as of the date of argument.