******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARLES S. SILVER ET AL. *v.* DONALD R.
HOLTMAN ET AL.
(AC 35427)

Lavine, Alvord and Schaller, Js.

*Argued November 19, 2013—officially released April 8, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Domnarski, J. [motion for summary

judgment]; Vacchelli, J. [judgment].)

*Ralph G. Eddy*, for the appellants (defendants).

*Edward W. Gasser*, with whom, on the brief, was *Amanda J. Morris*, for the appellees (named plaintiff).

*Opinion*

LAVINE, J. The defendants, Donald R. Holtman, Elizabeth W. Birmingham, and Sheila M. Bailey,[1] appeal from the judgment of the trial court, issuing a writ of mandamus and a declaratory judgment in favor of the plaintiff Charles S. Silver.[2] The lengthy litigation among the parties centers on whether a July 20, 2005 affidavit of facts (affidavit) attested to by Silver is a document that must be recorded on the land records of the town of East Granby (town). On appeal, the defendants claim that the court improperly concluded that the affidavit should be recorded on the land records pursuant to General Statutes (Rev. to 2005) §§ 7-24 (d) and 47-12a.[3] We affirm the judgment of the trial court.

In its February 13, 2013 memorandum of decision, the court, *Vacchelli, J.*, found the following facts. On July 28, 2005, Attorney William T. Barrante went to the town clerk's office to record a two page document on the land records. The first page of the document was an affidavit concerning property located in the town (property) and the second page contained a description of the property.[4] Barrante presented the document to Assistant Town Clerk, Karen Oliver. Oliver machine-stamped the first page of the document with the volume and page number of the land records and the time it was received. Oliver hand wrote the volume and page number beneath the date stamp and added her initials to Birmingham's stamped signature. Oliver also collected an $18 recording fee from Barrante.

When Birmingham returned to the clerk's office, Oliver showed her the affidavit because it contained the names of the plaintiff and Walter McCue, who, in the past, had been involved in litigation with the town over recording issues regarding the property. Birmingham thought that the affidavit was unusual and sought advice from Holtman by reading the affidavit to him over the telephone. As the town attorney, Holtman was familiar with the plaintiff and McCue due to their litigation history with the town and elsewhere. He also was familiar with recent litigation in which the town's refusal to record certain documents submitted by the plaintiff had been upheld by the Superior Court, *Hon. Richard M. Rittenband*, judge trial referee. Holtman concluded that the affidavit was not a document required or authorized by law to be recorded on the land records and that its purpose was to impede the collection of municipal taxes. He advised Birmingham to return the affidavit to whomever presented it, together with the recording fee paid.

Birmingham then crossed off the volume and page numbers and date stamp on the affidavit without entering the information in the day book. She returned the affidavit along with the recording fee and a cover letter to Barrante.[5] Thereafter, in September, 2005, the plain-

tiff commenced the present action.

The operative complaint is the amended complaint filed on April 14, 2011. The plaintiff alleged that he was a trustee of the P.A.T. Trust, also known as the P.A.T. Irrevocable Trust (trust), which was recorded on the town land records on or about March 22, 1995. The trust included real estate located at 6 Herman Drive in the town. The plaintiff further alleged that on July 20, 2005, in his capacity as a trustee, he executed an affidavit in accordance with § 47-12a. On July 28, 2005, Barrante presented the affidavit pursuant to the statute for record on the town land records, and, on that date, the affidavit was recorded in volume 158 at pages 130 and 131 of the land records. The plaintiff also alleged that the affidavit complied with § 47-12a and, as such, was a document required to be recorded on the land records when received by the town clerk. The plaintiff further alleged that at a time subsequent to July 28, 2005, Holtman instructed Birmingham to remove the affidavit from the land records. On July 29, 2005, Birmingham returned the affidavit to Barrante after removing the affidavit from the land records and crossing off the volume and page numbers that had been assigned to the affidavit. The plaintiff alleged that Birmingham's conduct constituted the unlawful removal of a public record in violation of General Statutes § 53-153. He also alleged that Birmingham, through Holtman, informed Barrante that Birmingham would not accept the affidavit for record, even though it had been received and accepted for same.

Moreover, the plaintiff alleged that in returning the affidavit to Barrante, Birmingham violated the duty she owed the plaintiff, which duty can be enforced only by a writ of mandamus. The plaintiff alleged that subsequent to Birmingham's resignation, Bailey became the town clerk, and he sought a writ of mandamus requiring Bailey to record the affidavit, and a declaratory judgment that Birmingham did not have the power to keep the affidavit out of the land records. The plaintiff sought exemplary damages, including attorney's fees, for wilful, wanton, and malicious conduct in violation of his statutory rights.

On June 3, 2011, the defendants filed an answer to the amended complaint in which they denied the material allegations of the complaint and alleged eleven special defenses, including that a writ of mandamus should not issue because the plaintiff had unclean hands. Thereafter, the plaintiff filed a motion for partial summary judgment as to liability. The defendants opposed the motion for partial summary judgment.

The court, *Domnarski, J.*, ruled on the motion for partial summary judgment in a memorandum of decision dated August 3, 2011. The court found that the essential facts were not in dispute: the plaintiff presented the affidavit to the clerk's office for record and

paid the required fee, the affidavit was recorded in volume 158 at page 130 of the land records, and then "unrecorded" after Birmingham discussed the matter with Holtman. The court identified the issue as whether the plaintiff is lawfully entitled to record the affidavit and concluded that the issue is governed by §§ 7-24 and 47-12a.[6] The plaintiff maintained that the affidavit should be recorded as it complies with the requirements of § 47-12a. The defendants contended that Birmingham was not required to record the affidavit as it did not contain the name of the current owner of the property and therefore did not comply with § 7-24 (d). In support of their position, the defendants relied on *McCue* v. *Birmingham*, 88 Conn. App. 630, 870 A.2d 1126, cert. denied, 274 Conn. 905, 876 A.2d 14 (2005). The court, however, concluded that *McCue* did not help the defendants for two reasons: (1) the documents at issue in *McCue* are different from the affidavit, and (2) *McCue* was decided on the basis of res judicata, and not pursuant to an analysis of the subject documents and relevant statutes.

Judge Domnarski found that an affidavit relating to the title of real property is authorized by § 47-12a to be recorded on the land records. The court recited the contents of the plaintiff's affidavit and concluded that it complied with the requirements of § 47-12a (b) in that it related to the death of a trustee, which is an event that may terminate an estate or interest, specifically the conveyance of the property. The court concluded that the affidavit also complies with § 47-12a (c) in that it contained a description of the affected real property and stated that the name of the person appearing by record to be the owner of the land at the time of the recording.

In addition, the court found that § 47-12a does not require the affidavit to name owners who do not appear on the land records. The statute only requires the affidavit to "state the name of the person appearing by the record to be the owner of the land at the time of the recording of the affidavit." General Statutes (Rev. to 2005) § 47-12a (c). Section 47-12a (c) provides that "[t]he town clerk shall index the affidavit in the name of that record owner." Moreover, the court found that Birmingham had testified at a deposition that the affidavit contained all of the information she needed to index it. The court determined that the town clerk is not responsible for assessing the possibility of future confusion or even the accuracy of the statements contained in the affidavit. The court, therefore, found that the affidavit complies with § 47-12a and is required to be recorded.[7]

The court also concluded that the plaintiff met the requirements for a writ of mandamus to issue. "The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the perfor-

mance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Miles* v. *Foley*, 253 Conn. 381, 391, 752 A.2d 503 (2000). The court therefore granted the plaintiff's motion for partial summary judgment and issued a writ of mandamus ordering Bailey to record the affidavit on the town land records.

The parties tried counts two, three, and four of the amended complaint before Judge Vacchelli, who issued a memorandum of decision on February 13, 2013. The court construed count two of the amended complaint to be seeking a declaratory judgment that Birmingham did not have the legal power to keep the affidavit out of the land records without the plaintiff's permission. Judge Vacchelli found that Judge Domnarski decided that exact issue when he ruled on the motion for partial summary judgment and adopted Judge Domnarski's ruling as the law of the case. See *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982) (court may treat prior interlocutory ruling as law of the case). Judge Vacchelli found that Judge Domnarski's decision was not clearly erroneous and *concluded that no manifest injustice would result from following it.* (Emphasis added.) Judge Vacchelli therefore issued a declaratory judgment in favor of the plaintiff and against Birmingham on count two of the amended complaint.

The court, however, found in favor of the defendants on counts three and four of the amended complaint. The court construed count three as a request for a declaratory judgment that Holtman did not have the legal power to order or authorize Birmingham to keep the affidavit out of the land records without the plaintiff's permission. The court found no evidence that Holtman was acting in a supervisory capacity and the plaintiff cited no authority for the proposition that a town attorney cannot give advice to his client regarding the recording of documents on the land records. The court found that count four alleged that Birmingham and Holtman acted wilfully, wantonly, maliciously, and in total disregard of the plaintiff's rights and sought exemplary damages, including attorney's fees. The court found no evidence of any design on the part of the defendants to injure the plaintiff and, therefore, there were no grounds on which to award punitive damages under the circumstances of this case. The court also found that there was no basis to award the plaintiff attorney's fees as it found no wilful or corrupt intent on the part of the defendants. In summary, the court issued a declaratory judgment in favor of the plaintiff on count two of the amended complaint and rendered judgment for the defendants on counts three and four thereof. Thereafter the defendants appealed.

On appeal, the defendants claim that the affidavit is

not a document suitable for recording pursuant to either § 7-24 (d) or § 47-12a. More specifically, the defendants claim that Judge Domnarski improperly issued a writ of mandamus because (1) the affidavit does not identify the present grantee in violation of § 7-24 (d); (2) the affidavit does not comply with § 47-12a as its ostensible purpose is to obfuscate, rather than to clarify, title to the property, and to avoid the payment of taxes; and (3) there is a question of fact as to whether the plaintiff was proceeding with unclean hands.[8] We disagree with each of the defendants' claims.

We agree with Judge Domnarski that the question of whether the affidavit should be filed on the land records is controlled by §§ 7-24 and 47-12a. Our resolution of the claims on appeal turns on our construction of the applicable statutes.

"[I]ssues of statutory construction raise questions of law over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratexual evidence of the meaning of the statute." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 614–15, 72 A.3d 394 (2013).

In construing a statute, a court presumes "that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotations marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 303, 21 A.3d 759 (2011). "[I]t is an elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts. . . . When statutes relate to the same subject matter, they must be read together and specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Citation omitted; internal quotation marks omitted.) *Coregis Ins. Co.* v. *Fleet National Bank*, 68 Conn. App. 716, 720, 793 A.2d 254 (2002).

On the basis of our reading and construction of the two statutes at issue, we conclude that the plain and unambiguous terms of § 47-12a pertain to the contents of an affidavit of facts relating to title or interest in

real estate, and that § 7-24 pertains to the duties and responsibilities of the town clerk to record and keep public records.

I

The defendants first claim that Judge Domnarski improperly issued a writ of mandamus ordering the town clerk to record the affidavit because the affidavit did not identify the current owner of the property. We disagree, as an affidavit of fact relating to an interest in real estate does not require that it state the name of the property owner. Such an affidavit is required to state the name of the owner of record at the time the affidavit is filed. See General Statutes (Rev. to 2005) § 47-12a.

The parties agree that the affidavit was presented to Oliver for record and the recording fee was paid in advance; the affidavit was stamped as to the day and time it was received and the page and volume number in accordance with § 7-24 (c). The defendants claim, however, that the affidavit is not a document that should have been recorded as it does not comply with § 7-24 (d) for want of the name of the present owner or grantee of the property.[9] We disagree that § 7-24 (d) is controlling of the question as to whether the affidavit is a document that must be recorded on the land records.

The defendants' claim is governed by General Statutes (Rev. to 2005) § 47-12a, which provides in relevant part: "(a) An affidavit, which states facts relating to the matters named in subsection (b) and *which may affect the title to or any interest in real estate in this state*, and which is made *by any person having knowledge of the facts* or competent to testify concerning them in open court, *may be recorded in the land records of the town in which the real estate is situated.* . . .

"(b) The affidavit provided for in this section may relate to the following matters: Age, sex, birth, *death*, capacity, relationship, family history, heirship, names, identity of parties, marital status, possession or adverse possession, adverse use, residence, service in the armed forces, conflicts and ambiguities in description of land in recorded instruments, and *the happening of any condition or event which may terminate an estate or interest.*

"(c) Every affidavit provided for in this section *shall include a description of the land, title to which may be affected by facts stated in the affidavit,* and shall state the *name of the person appearing by the record to be the owner of the land at the time of the recording of the affidavit.* The town clerk shall index the affidavit in the name of that record owner." (Emphasis added.)

In the subject affidavit, the plaintiff attested that McCue was a trustee of the trust, and that McCue had died, among other things. See footnote 4 of this opinion. Judge Domnarski concluded that the affidavit complied

with the requirements of § 47-12a in that it related to the death of a trustee and an event that may terminate an estate or interest, specifically the conveyance of the property.[10] Moreover, the court found that the affidavit complied with § 47-12a (c) in that it contained a description of the property affected and stated the names of the persons appearing by record to be the owners of the land at the time of the recording. The court also found that § 47-12a does not require the affidavit to identify the grantee or owners of the property whose names do not appear on the land records. Moreover, the court found that Birmingham had testified at a deposition that the affidavit contained all of the information she needed to index it. The record supports the court's findings and we agree with the court's construction of § 47-12a and application to the facts of this case.

Although § 7-24 does not denominate the contents of an affidavit of facts, it is relevant because it directs the town clerk to record a document that is presented for record on the town land records. General Statutes (Rev. to 2005) § 7-24 (d) provides in relevant part: "Each town clerk *shall* also, within twenty-four hours of the receipt for record of any such instrument, enter in chronological order according to the time of its receipt . . . ." (Emphasis added.) "Absent an indication to the contrary, the legislature's choice of the mandatory term 'shall' rather than the permissive term 'may' indicates that the legislative directive is mandatory." *Bailey* v. *State*, 65 Conn. App. 592, 604, 783 A.2d 491 (2001). Judge Domnarski concluded that the affidavit complied with § 47-12a and Birmingham was required by law to record it. We agree with Judge Domnarski.

Further, the text of § 7-24 does not support the defendants' position that the name of the present owner of the property must be included in the affidavit. General Statutes (Rev. to 2005) § 7-24 provides in relevant part: "(b) There shall be kept in each town proper books . . . *in which all instruments required by law to be recorded shall be recorded at length by the town clerk* within thirty days from the time they are left for record.

"(c) The town clerk *shall*, on receipt of any instrument for record, write thereon the day, month, year and time of day when [the town clerk] received it and the record shall bear the date and time of day; but he shall not be required to receive any instrument for record unless the fee for recording it is paid to him in advance . . . and, when he has received it for record, he shall not deliver it up to the parties or either of them until it has been recorded. . . .

"(d) Each town clerk *shall* also, within twenty-four hours of the receipt for record of any such instrument, enter in chronological order according to the time of its receipt as endorsed thereon, (1) the names of sufficient parties thereto to enable reasonable identification of the instrument, (2) the nature of the instrument, and

(3) the time of its receipt." (Emphasis added.)

Section 7-24 clearly and unambiguously addresses the responsibilities of the town clerk and the manner in which he or she records an instrument presented for record. Even if § 7-24 (d) set forth the requirements for an affidavit of facts, which it does not, that subsection does not provide that the present owner of the property be stated on the affidavit. "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. . . . Absent ambiguity, courts cannot read into statutes by construction, provision that are not clearly stated." (Citation omitted; internal quotation marks omitted.) *Battersby* v. *Battersby*, 218 Conn. 467, 470, 590 A.2d 427 (1991). For the foregoing reasons, the defendants' first claim fails.

II

The defendants' second claim is that affidavit does not comply with § 47-12a because its ostensible purpose is to obfuscate, rather than to clarify, title to the property, and to avoid the payment of taxes. We decline to review this claim as it was not decided by the trial court. Judge Domnarski clearly stated in his memorandum of decision that he was "not ruling on the legal consequences of the affidavit upon the title to the subject land. The court only determines here that the affidavit complies with § [47]-12a and that it is required by law to be recorded. The effect, if any, of the affidavit upon any future proceedings must be determined in those proceedings." We agree with the trial court that the plaintiff's purpose in filing the affidavit, beyond the dictates of § 47-12a, did not have to be decided. Moreover, we are loathe to interpret the law to saddle town clerks with the impossible task of determining the intent or motive of a party filing an affidavit of fact. See General Statutes (Rev. to 2005) § 7-24.

"The theory upon which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review." *Richter* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984). When *an issue has not been ruled on by the trial court,* an appellate court may not review the issue for the first time on appeal. See *Miskimen* v. *Biber*, 85 Conn. App. 615, 626, 858 A.2d 806 (2004), cert. denied, 272 Conn. 916, 866 A.2d 1287 (2005). We therefore decline to review this claim.

The dissent claims that the "defendants were not given the opportunity to present evidence on their claim that the plaintiff came to court with unclean hands." We respectfully disagree. Although Judge Domnarski did not make an explicit finding with regard to the plaintiff's claimed ostensible purpose in filing the affidavit, he implicitly considered the defendants' claim. He

found that "[t]hese parties have had a long history of litigation. The defendants used a considerable portion of their briefs informing the court of the difficulties that the town . . . and other towns, have encountered in prosecuting tax lien foreclosures against individuals or entities connected to the plaintiff. They claim that the plaintiff's attempt to record this document is part of a plan to avoid the payment of taxes."[11]

The court further found the "thrust of the defendant[s'] objection to the recording of the affidavit is that it will create confusion since the identity of the actual, present, owner of the land is not stated in the affidavit. The defendants misread the requirements of the statute. The affidavit need only state the person *'appearing by the record to be the owner of the land.'* The statute does not require that the affidavit name owners who do not appear on the land records. It is not the responsibility of the town clerk to assess the possibility of future confusion or even the accuracy of the statements contained in the affidavit. The only responsibility of the town clerk is clearly stated in § 47-12a (c): *'The town clerk shall index the affidavit in the name of that record owner.'* The town clerk who received the affidavit on July 28, 2005, testified at a later deposition that the affidavit contained all of the information that she needed in order to properly index the document." (Emphasis in original.)

We agree with the trial court that the intent of a party filing an affidavit of facts is not relevant to whether the affidavit complies with § 47-12a and that it is not the clerk's responsibility to determine the filer's intent. For this reason, we conclude that the defendants' claim with respect to the ostensible purpose of the affidavit is not reviewable.

### III

The defendants' third claim is that the court improperly issued a writ of mandamus to record the affidavit on the land records because there was a question of fact as to whether the ostensible purpose of filing the affidavit was to avoid the payment of taxes and thus the plaintiff was proceeding with unclean hands. We disagree.

The basis of the defendants' claim appears to be that both Judge Domnarski and Judge Vacchelli acknowledged that the parties had a lengthy history of litigation. Neither judge, however, found that that history of litigation and the intent of filing the affidavit was relevant to the question of whether the affidavit was a document that should be recorded on the town land records, and neither do we. See part II of this opinion.

The law of this case was determined by Judge Domnarski when he ruled on the plaintiff's motion for partial summary judgment. Summary "judgment shall be rendered forthwith if the pleadings, affidavits and any other

proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. In this case the defendants asserted the special defense of unclean hands to the plaintiff's petition for a writ of mandamus. We conclude that the doctrine of unclean hands is not applicable to this case.

"The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied . . . for the advancement of right and justice. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his *opponent engaged in wilful misconduct with regard to the matter in litigation.*" (Emphasis added; internal quotation marks omitted.) *Emigrant Mortgage Co.* v. *D'Agostino*, 94 Conn. App. 793, 804, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006).[12] The litigation on which the defendants rely to demonstrate the plaintiff has come into court with unclean hands is not the present litigation, but litigation concerning taxes due and owing, not in the town, but in Simsbury.[13]

"Mandamus is an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issue the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *Miles* v. *Foley*, supra, 253 Conn. 391.

"Even satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus. . . . In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity." (Citation omitted.) *Hennessey* v. *Bridgeport*, 213 Conn. 656, 659, 569 A.2d 1122 (1990). "In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *North-*

*east Savings, F.A.* v. *Hintlian*, 241 Conn. 269, 275, 696 A.2d 315 (1997).

"In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its actions." (Internal quotation marks omitted.) *Yanow* v. *Teal Industries, Inc.*, 196 Conn. 579, 583, 494 A.2d 573 (1985). Here, Judge Vacchelli found that Judge Domnarski's ruling on the motion for partial summary judgment was not clearly erroneous and would not work a manifest injustice if followed. Both of the judges concluded that the legal effect of the affidavit could be determined in another proceeding. As we concluded in part I of this opinion, the affidavit complies with § 47-12a and pursuant to § 7-24 the town clerk had a duty to record the affidavit if presented for record. Birmingham was, and now Bailey is, required by law to record the affidavit, regardless of the litigation history of the parties. As Judge Domnarski stated, his issuing a writ of mandamus to record the affidavit on the town land records was not a ruling on the affidavit's effect on the title to the property. Any issues regarding title to the property must be decided in a separate proceeding.

We therefore conclude that that the court property granted the plaintiff's motion for partial summary judgment as there is no genuine issue of material fact, as a matter of law. The facts on which the defendants asserted their unclean hands special defense do not implicate the present litigation. We also conclude that the trial court did not abuse its discretion in weighing the equities in this matter. The statutes at issue demonstrate that the plaintiff was entitled to have his affidavit recorded on the land records and the clerk was required to do so.

The judgment is affirmed.

In this opinion SCHALLER, J. concurred.

[1] As of July 28, 2005, Holtman was the town attorney for the town of East Granby, and Birmingham was the town clerk. Bailey succeeded Birmingham as the clerk for the town of East Granby and thereafter was cited in as a party defendant.

[2] The plaintiff Gail McCue, executrix of the estate of Walter T. McCue, Jr., is not a party to this appeal. In this opinion, we refer to Silver as the plaintiff.

[3] Hereinafter, unless otherwise indicated, all references to §§ 7-24 and 47-12a are to the 2005 revision of the statute.

[4] The affidavit stated:

"AFFIDAVIT OF FACTS
"Under Conn. Gen. Stat. Sec. 47-12a

"PREMISES AFFECTED:    6 Herman Drive
                       East Granby, Connecticut
                       (See Schedule A)
"RECORD OWNER:         Charles S. Silver and Walter McCue, Trustees
                       P.A.T. Irrevocable Trust
                       67 Laurel Lane, Simsbury, CT 06070

"I, Charles S. Silver, being first duly sworn, herby depose and say:

"1. I have personal knowledge of the facts stated in this affidavit.

"2. I am one of the trustees of the P.A.T. Irrevocable Trust, hereafter 'the Trust,' and have accepted the trust

"3. The other trustee, Walter McCue, died on August 30, 2004.

"4. The Trust is the record owner of the real estate located at 6 Herman

Drive in the Town of East Granby, Connecticut, as more fully described in Schedule A attached to this affidavit.

"5. A Notice of trust with respect to the Trust was recorded in the East Granby Land Records, in Volume 106 at Page 495.

"6. On December 7, 1998 the Trust executed a deed conveying the aforesaid real estate, but to the undersigned's knowledge that deed has not been recorded.

"7. On that date the Trust was terminated.

"Dated this 20th day of July, 2005.

"/s/ Charles S. Silver

"Charles S. Silver, Affiant"

[5] Birmingham stated in the letter in part: "On advice of Attorney Donald R. Holtman, the Town Attorney for the Town of East Granby, I am returning your $18.00 in currency as well as your two-page 'Affidavit of Facts.' Attorney Holtman has told me not to record this document."

[6] General Statutes (Rev. to 2005) § 7-24 is entitled: "Recording of instruments; safekeeping of records; recording of illegible instruments."

General Statutes (Rev. to 2005) § 47-12a is entitled: "Affidavit of facts relating to title or interest in real estate."

[7] In determining that the plaintiff had the legal right to have the affidavit recorded, the court stated that it was not ruling on the legal effect of the affidavit on the title to the subject land.

[8] In issuing a declaratory judgment on count two of the amended complaint, Judge Vacchelli adopted Judge Domnarski's reasoning on the plaintiff's motion for partial summary judgment as the law of the case. To the extent that the defendants' claims pertain to the declaratory judgment issued by Judge Vacchelli, our resolution of the mandamus claims applies to the declaratory judgment as well.

[9] The defendants rely on *McCue* v. *Birmingham*, supra, 88 Conn. App. 630 to support their position. We agree with Judge Domnarski's conclusion that the *McCue* case does not help the defendants. Although *McCue* involved the same parties and the same property, it concerned different documents and two different lawsuits. Id., 636–37.

In the first action, the plaintiff sought a declaratory judgment following Birmingham's refusal to record a document presented for record, which was entitled "notice of sale" and "notice of termination of P.A.T. irrevocable trust." Id., 632. The trial court, *Hon. Richard M. Rittenband*, judge trial referee, rendered judgment in favor of Birmingham, concluding that the document at issue did not comply with § 47-12a (c) as it did not "state the name of the person appearing by record to be the owner of the land at the time of the recording of the affidavit." (Internal quotation marks omitted.) Id., 632–33. No appeal was taken from that judgment. Id., 633.

In the *McCue* action, the plaintiffs' sought a writ of mandamus regarding another set of documents that Birmingham had accepted for record and then had "unrecorded." Id. The defendants filed a motion for summary judgment claiming that the issue raised by the plaintiffs' multicount complaint was res judicata in that it previously had been decided by Judge Rittenband in the first action. Id. The motion for summary judgment was decided by Judge Rittenband who agreed with the *McCue* defendants that the issue was res judicata and that collateral estoppel barred the *McCue* action. Id., 633–34. The judgment was appealed to this court, which considered the issue of res judicata only. Id., 635. Although this court recited Judge Rittenband's analysis concerning the issue in the two underlying cases, it did so for purposes of determining whether the issues alleged in the *McCue* action were res judicata. This court did not analyze § 7-24 (d) nor consider whether the identity of the grantee needed to be included in documents presented for record pursuant to § 47-12a. For these reasons, *McCue* v. *Birmingham*, supra, 88 Conn. App. 630, is not controlling of the issues before us in the present case.

[10] At oral argument in this court, the defendants conceded that McCue's death was appropriate to record on the land records because it affected title to or interest in the property.

[11] The defendants' appendix to their appellate brief contains more than 200 hundred pages of documents related to the issue of ongoing litigation between the parties. Judge Vacchelli stated in his memorandum of decision that he also reviewed those documents. He adopted Judge Domnarski's ruling as the law of the case and concluded that following Judge Domnarski's decision would not work a manifest injustice.

[12] "What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts . . . . A variation on this

formula limits the clean hands defense to cases in which the plaintiff is seeking to secure a benefit from the very conduct, which is inequitable." (Footnote omitted; internal quotation marks omitted.) 1 D. Dobbs, Law of Remedies, (2d Ed. 1993) § 2.4 (2), p. 95.

[13] We cannot conclude the mere commencement of legal action to challenge the imposition of real property taxes constitutes unclean hands. A party has a legal right to seek redress.