******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDWARD A. PERUTA ET AL. *v.* FREEDOM
OF INFORMATION COMMISSION
(AC 36436)

Alvord, Keller and Harper, Js.

*Argued March 3—officially released June 9, 2015*

(Appeal from Superior Court, judicial district of New
Britain, Cohn, J. [motion to intervene]; Prescott, J.
[judgment].)

*Rachel M. Baird*, with whom, on the brief, was *Mitchell Lake*, for the appellants (plaintiffs).

*Kathleen K. Ross*, commission counsel, with whom,
on the brief, was *Colleen M. Murphy*, general counsel,
for the appellee (named defendant).

*Stephen R. Sarnoski*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general, for the appellee (intervening defendant).

*Opinion*

PER CURIAM. The plaintiffs, Edward A. Peruta[1] and American News and Information Services, Inc., appeal from the judgment of the trial court affirming the decision of the defendant Freedom of Information Commission (commission) that dismissed the plaintiffs' complaint. The plaintiffs had filed a complaint with the commission claiming that the Department of Emergency Services and Public Protection (department)[2] improperly denied them access to information contained in pending applications for temporary state permits to carry pistols or revolvers. On appeal, the plaintiffs claim that the court erroneously construed General Statutes § 29-28 when it concluded that the names and addresses of those applicants were exempt from disclosure under the Freedom of Information Act (act), General Statutes § 1-200 et seq. We affirm the judgment of the trial court.

The following factual and procedural background is relevant to our consideration of the plaintiffs' claim on appeal. On January 4, 2012, the plaintiffs sent the department an e-mail requesting "[p]rompt [a]ccess to any and all computerized information ([n]ame and [t]own) regarding pending requests for State and National Criminal History Records checks that have yet to be submitted to the FBI CJIS for [p]ermit to [c]arry [p]istols or [r]evolvers by individuals who have not yet been issued or are not in possession of a [s]tate [p]ermit to [c]arry [p]istols or [r]evolvers. This request is for the name of the individual who is the subject of the request and the name of the submitting issuing authority only." The department interpreted the plaintiffs' communication to be a request for the names and addresses of all pistol permit applicants whose applications were pending while state criminal background checks and federal fingerprint checks were being performed. The department provided the plaintiffs with a list of the requested records on January 18, 2012, but it redacted the applicants' names and addresses.

On January 20, 2012, Peruta filed a complaint with the commission challenging the redaction of the names and addresses of the individuals with pending permit applications. The commission held a contested case hearing on June 21, 2012. In its final decision dated November 14, 2012, the commission, referring to two of its previous decisions, concluded that the department did not violate the provisions of the act by redacting that information from the records and dismissed the plaintiff's complaint.

The plaintiffs appealed from the commission's decision by filing an administrative appeal with the Superior Court, claiming that the plain language of § 29-28 (d) compelled the conclusion that the legislature did not intend to exempt from disclosure the names of individu-

als who had not yet received pistol permits. The parties filed their briefs, and the court heard oral argument on September 25, 2013. On November 7, 2013, the court issued its sixteen page memorandum of decision. After setting forth the issue and procedural history, the court provided a thorough analysis of the parties' claims, the standard of review and the applicable statutory and case law. In its decision, the court concluded: "[T]he commission properly interpreted § 29-28 (d) to conclude that the legislature intended to exempt from disclosure the names and addresses contained on the pistol carry permit applications that were pending or had been approved. A contrary conclusion would frustrate the purpose and intent of the explicit exemption from disclosure contained in § 29-28 (d). At the very least, the commission's interpretation of the statute is reasonable and therefore, under the circumstances of this case, entitled to deference. Accordingly, the decision of the commission is affirmed." This appeal followed.

"This court reviews the trial court's judgment pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Under the UAPA, it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citation omitted; internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 281, 77 A.3d 121 (2013).

"Cases that present pure questions of law, however, traditionally invoke a broader standard of review than ordinarily is involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that we will defer to an agency's interpretation of a statutory term only when that interpretation of the statute previously has been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation and is reasonable." (Citation omitted.) *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 446, 984 A.2d 748 (2010).

In the present case, the issue before this court is whether the commission properly construed § 29-28 (d) when it concluded that the intention of the legislature was to exempt from disclosure the names and addresses of persons who have applied for but not yet received

permits to carry revolvers or pistols. Section 29-28 (d) provides: "Notwithstanding the provisions of sections 1-210[3] and 1-211,[4] the name and address of a person issued a permit to sell at retail pistols and revolvers pursuant to subsection (a) of this section or a state or a temporary state permit to carry a pistol or revolver pursuant to subsection (b) of this section, or a local permit to carry pistols and revolvers issued by local authorities prior to October 1, 2001, shall be confidential and shall not be disclosed, except (1) such information may be disclosed to law enforcement officials acting in the performance of their duties, including, but not limited to, employees of the United States Probation Office acting in the performance of their duties, (2) the issuing authority may disclose such information to the extent necessary to comply with a request made pursuant to section 29-33, 29-37a or 29-38m for verification that such state or temporary state permit is still valid and has not been suspended or revoked, and the local authority may disclose such information to the extent necessary to comply with a request made pursuant to section 29-33, 29-37a or 29-38m for verification that a local permit is still valid and has not been suspended or revoked, and (3) such information may be disclosed to the Commissioner of Mental Health and Addiction Services to carry out the provisions of subsection (c) of section 17a-500." (Footnotes added.)

The plaintiffs claim that the plain language of the statute prohibits the disclosure of the names and addresses of only those individuals who have been *issued* permits to carry revolvers or pistols, and that the names and addresses of the *applicants* for those permits are required to be provided when a request is made pursuant to the act. According to the plaintiffs, "[t]he issuance of either a temporary handgun permit or a handgun permit is the point at which confidentiality attaches." By concluding that § 29-28 (d) also precludes disclosure of the applicants' names and addresses, the plaintiffs argue, the trial court has amended the statute to add provisions that the legislature did not include when it was enacted.

The defendants claim, and the trial court agreed, that the plaintiffs' interpretation of the statute would thwart the purpose of the statute and, therefore, lead to absurd or bizarre results. As argued by the department, "[i]f the names and addresses of all pistol permit applicants were to be publicly disclosed, it would be a relatively simple process to identify and separate those few whose applications were later denied, leaving only those whose applications were approved—the holders of permits whose names and addresses were promised confidentiality by the legislature under . . . § 29-28 (d). This is the very antithesis of what the legislature intended." We agree with the defendants.

The trial court noted in its memorandum of decision

that the commission, prior to issuing the present decision, previously articulated its interpretation of § 29-28 (d) in two contested cases decided in 1999 and 2008. Subsection (d) of § 29-28 was enacted by the legislature in the July, 1994 special session. Five years later, the commission had the occasion to interpret the language of subsection (d) in *Sherman* v. *Board of Firearms Permit Examiners*, Freedom of Information Commission, Docket No. FIC 1998-327 (August 25, 1999). In *Sherman*, the complainant, pursuant to the act, sought access to all of the board's files of open and closed appeals for the fiscal year of 1997–1998. The board denied the request, and the complainant appealed to the commission. The commission determined that, with respect to the closed files, the names and addresses of the appellants who were ultimately successful in obtaining their permits were exempt from disclosure, whereas the names and addresses of the unsuccessful appellants were not exempt from disclosure. With respect to open files, the commission concluded that the names and addresses of those appellants were exempt from disclosure because ultimately some of the appellants might be successful and obtain their permits.

Nine years later, the commission again had the opportunity to construe the provisions of § 29-28 (d) in *Brown* v. *Chief, Police Dept., Bridgeport*, Freedom of Information Commission, Docket No. FIC 2007-268 (March 26, 2008). In *Brown*, the complainants made a request pursuant to the act to inspect all pistol applications submitted between January 1, 1996, and January 15, 2007. After their request was denied in part, the complainants appealed to the commission, claiming that the plain language of the statute did not exempt the information contained in pistol permit applications. In its final decision, the commission referred to *Sherman* and reached the following conclusion: "[Section] 29-28 (d) . . . exempts from mandatory disclosure the names and addresses of persons whose applications are pending; persons whose applications have been approved; persons whose applications were initially denied but later approved on appeal; and persons whose applications were denied but who have pending appeals of such denials."

We now must determine whether the commission's interpretation of § 29-28 (d) is time-tested and reasonable and, therefore, entitled to deference. See *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 162–66, 931 A.2d 890 (2007). The commission's decision in the present case is the third consistent articulation of the commission's interpretation of § 29-28 (d). Since subsection (d) was enacted in 1994, the commission has issued decisions in 1999, 2008 and 2012, wherein it has concluded that the names and addresses of applicants for state permits and temporary state permits are exempt from disclosure under the act. The commission's interpretation of the statutory language

has been consistent for more than a decade.

Further, as noted by the trial court, the legislature has not amended subsection (d) of § 29-28 in any manner that would suggest disagreement with the commission's interpretation even though there were opportunities to do so when § 29-28 was amended in 2001, 2005, 2007, 2011, 2012 and 2013.[5] "[W]e have employed the [legislative acquiescence] doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue." *Berkley* v. *Gavin*, 253 Conn. 761, 777 n.11, 756 A.2d 248 (2000). "[L]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute . . . ." (Internal quotation marks omitted.) *Patel* v. *Flexo Converters U.S.A., Inc.*, 309 Conn. 52, 62 n.9, 68 A.3d 1162 (2013).[6]

To be entitled to deference, the commission's interpretation of § 29-28 (d) also must be reasonable. In conducting a limited review for reasonableness, we apply our well established rules of statutory construction. See *Board of Selectmen* v. *Freedom of Information Commission*, supra, 294 Conn. 449. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, supra, 310 Conn. 283.

As stated by the trial court in its memorandum of decision, "[t]here is no dispute in this case that the statute unambiguously exempts from disclosure the name and address of a person issued a pistol carry permit. What is less than clear, however, is whether the confidentiality attaches from the commencement of the permit application process or only after the permit has been issued." Acknowledging the plaintiffs' argument that a court may not rewrite a statute to

supply omissions or add exceptions merely because it appears that good reasons exist for adding them; *Vincent* v. *New Haven*, 285 Conn. 778, 792, 941 A.2d 932 (2008); the trial court nevertheless concluded that the plaintiffs' construction of § 29-28 (d) was unreasonable. The court determined that the plaintiffs' interpretation "would lead to the bizarre result of destroying the confidentiality of permit holders intended by the statute by requiring local and state officials to disclose the names and addresses of persons contained on the permit applications, which applications were obviously necessary for them to file to obtain the permit in the first place. Under the plaintiffs' interpretation, an interested person could make a . . . request [under the act] for a list of the names and addresses of all individuals who filed a permit application during a particular period, and then subsequently obtain the names and addresses of all individuals whose applications are subsequently denied. A quick cross-referencing of those two lists would then allow the person to discover the name and address of any 'person issued a permit.' The legislature could not have intended in one stroke to create confidentiality for persons issued a permit, but to leave a gaping hole in the same provision that would allow the confidentiality to be so easily eviscerated." Accordingly, the court determined that a more reasonable construction of the statute is that "the legislature intended that the permitting process be treated as a continuum of events during which an applicant's name and address should be treated as confidential unless he or she is ultimately denied a permit."[7]

The trial court concluded that the commission's construction of § 29-28 (d) was reasonable. The plaintiffs claim that the court's determination was erroneous. On appeal, they claim that the commission's interpretation cannot be considered reasonable because (1) it would prevent local issuing authorities from adequately investigating applicants who want to obtain temporary state permits by prohibiting the disclosure of the names and addresses of those applicants to the people familiar with them, (2) the Board of Firearms Permit Examiners (board), the department, and the courts in hearing appeals from board decisions when the files have not been sealed have ignored the commission's decisions, and (3) the provisions in § 29-28 (c) would be superfluous after the enactment of § 29-28 (d). We are not persuaded.

With respect to investigations into the suitability of applicants for permits that are conducted by local issuing authorities, the plaintiffs maintain that such investigations are not included within the three exemptions from disclosure set forth in § 29-28 (d), and, therefore, investigators would be prevented from identifying the applicant by name or address to the applicant's neighbors or acquaintances. This argument fails because the provisions of a statute must be read in harmony with

the provisions of other statutes in the chapter. "[I]t is an elementary rule of statutory construction that we must read the legislative scheme as a whole in order to give effect to and harmonize all of the parts. . . . When statutes relate to the same subject matter, they must be read together and specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Silver* v. *Holtman*, 149 Conn. App. 239, 249, 90 A.3d 203, cert. denied, 312 Conn. 904, 91 A.3d 906 (2014).

General Statutes § 29-29 (a) provides in relevant part: "No temporary state permit for carrying any pistol or revolver shall be issued under the provisions of section 29-28 unless the applicant for such permit gives to the local authority, upon its request, full information concerning the applicant's criminal record. . . . The local authority shall take a full description of such applicant and make an investigation concerning the applicant's suitability to carry any such weapons." Section 29-29, which references § 29-28, expressly authorizes the local issuing authorities to conduct investigations into the suitability of applicants to carry pistols or revolvers. When § 29-29 is read together with the provisions setting forth the exemptions from disclosure in § 29-28 (d), it is evident that investigators are authorized to disclose the names and addresses of the applicants during their investigations.[8]

With respect to the plaintiffs' argument that the commission's construction of § 29-28 (d) is not reasonable because the board, the department, and the courts in hearing appeals from board decisions when the files have not been sealed have ignored the commission's decisions, the plaintiffs cite no statutory or case law in support of their position. Even if true, the failure of other agencies to accord deference to the commission's statutory interpretation does not mean that the commission has disavowed its prior decisions.[9]

Finally, the plaintiffs claim that the commission's interpretation is unreasonable because the provisions in § 29-28 (c) would be superfluous in light of the provisions in § 29-28 (d). Section 29-28 (c) provides: "No issuing authority may require any sworn member of the Department of Emergency Services and Public Protection or an organized local police department to furnish such sworn member's residence address in a permit application. The issuing authority shall allow each such sworn member who has a permit to carry a pistol or revolver issued by such authority to revise such member's application to include a business or post office address in lieu of the residence address. The issuing authority shall notify each such member of the right to revise such application." The plaintiffs argue that if § 29-28 (d) is construed to prohibit the disclosure of the names and addresses of all applicants, § 29-28 (c)

would not be necessary and would be superfluous.[10]

This issue was considered by the trial court. In its memorandum of decision, the trial court determined, and we agree, that § 29-28 (d) is not plain and unambiguous because the plaintiffs' construction of that subsection would lead to absurd or bizarre results. Accordingly, the trial court reviewed the legislative history of § 29-28 (d) for guidance in reconciling subsection (d) with subsection (c). The court's analysis with respect to this claim is thorough and persuasive, and we therefore incorporate it into this opinion.

The court stated: "At oral argument in this proceeding, the court inquired whether the commission and [the department's] construction of § 29-28 (d) could be harmonized with subsection (c) of the same statute, which provides that '[n]o [permit] issuing authority may require any sworn member of [a state or local police department] to furnish such sworn member's residence address in a permit application.' At first glance, this language would appear superfluous if, as the commission and [the department] contend, the name and address of an individual who had applied for a permit is already exempt from disclosure unless and until the application is denied.

"These provisions, however, may be harmonized when placed in context of the timing of their enactment and the statutory scheme as a whole. First, it is important to note that subsection (c) of § 29-28 was enacted in 1992, that is, prior to the legislature's passage in 1994 of subsection (d), which created the much broader confidentiality protection for the name and address of a person issued a pistol carry permit. Consequently, when subsection (c) was enacted in 1992, the statute did not exempt the names and addresses of any applicant for a pistol carry permit, and subsection (c) was necessary to prevent the disclosure of the home addresses of law enforcement officers.

"Second, in the 1994 July Special Session, the legislature debated the passage of House Bill No. 7501, which, as amended, resulted in the enactment of Public Acts, Spec. Sess., July, 1994, No. 94-1. The original version of the bill would have removed subsection (c) from § 29-28 as unnecessary, because the bill included the existing language, later codified as subsection (d), that exempts from disclosure the names and addresses of *any* person issued a pistol carry permit. During the legislative debate on House Bill No. 7501, Representative [F. Philip] Prelli of the 63rd assembly district inquired with Representative [Michael P.] Lawlor regarding why subsection (c) was being removed, and thereby making public the names and addresses of police officers. Representative Lawlor of the 99th assembly district responded: '[B]ecause we've decided to apply that protection to everyone who holds a permit to carry . . . . So the name and address of everyone

who holds a carry permit . . . will now not be accessible through [the act] by any private person, not only police officers and corrections officials.' 37 H.R. Proc., Pt. 26, Spec. Sess., July, 1994, p. 9531; remarks of Representative Lawlor.

"Representative Prelli then raised the point that, even after extending the confidentiality to everyone, it was possible that the name and address of a law enforcement official might still be released under one of the statutory exceptions to confidentiality contained in subsection (d) of § 29-28. Id. Subsection (d) prohibits disclosure of a person's name and address, except the authority issuing the permit may disclose the information to the extent necessary to comply with a request made pursuant to General Statutes § 29-33. Section 29-33 makes it a felony for any person to sell or transfer any pistol or revolver to another person who does not have a pistol carry permit . . . and thus requires sellers to verify with the department that the buyer has a valid carry permit . . . .

"In response to this colloquy, Representative Prelli introduced an amendment (LCO No. 3080; House Amendment I) to House Bill No. 7501. The amendment restored subsection (c) to § 29-28. In support of the amendment, Representative Prelli remarked that even though he understood that Representative Lawlor had assured the chamber that the names and addresses of *all* permit holders would not be available through [the act], he remained concerned that the names and addresses of law enforcement officials could be disclosed through some loophole. 37 H.R. Proc., supra, pp. 9552–53, remarks of [Representative Prelli]. Representative Lawlor viewed the amendment as friendly and well intentioned, and supported its passage. Id., p. 9554. The House then restored subsection (c) to the version of the bill that ultimately passed and became Public Acts, Spec. Sess., July, 1994, No. 94-1.

"This legislative history makes clear, therefore, that the legislature chose not to repeal subsection (c) when subsection (d) was enacted out of an abundance of caution to ensure that the names and addresses of police officers would not be disclosed under any circumstances. Consequently, subsections (c) and (d) can be harmonized, and this court's construction of subsection (d) does not render subsection (c) superfluous. If anything, this history suggests the importance placed by the legislature on ultimately protecting the confidentiality of the names and addresses of persons ultimately issued a pistol carry permit." (Emphasis in original; footnote omitted.)

We agree with the trial court that the commission's interpretation of § 29-28 (d) was both time-tested and reasonable, and, therefore, we accord it "great weight . . . ." (Internal quotation marks omitted.) *Longley* v. *State Employees Retirement Commission*, supra, 284

Conn. 164. Having accorded deference to the commission's construction of the statutory language, the trial court properly affirmed its decision.

The judgment is affirmed.

[1] Peruta is the president of American News and Information Services, Inc., which also is a plaintiff.

[2] The court, *Cohn*, *J.*, permitted Reuben F. Bradford, in his capacity as the department's commissioner, to intervene in the plaintiffs' administrative appeal. We refer in this opinion to Bradford and the commission as the defendants.

[3] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. . . ."

[4] General Statutes § 1-211 (a) provides in relevant part: "Any public agency which maintains public records in a computer storage system shall provide, to any person making a request pursuant to the Freedom of Information Act, a copy of any nonexempt data contained in such records, properly identified, on paper, disk, tape or any other electronic storage device or medium requested by the person, including an electronic copy sent to the electronic mail address of the person making such request, if the agency can reasonably make any such copy or have any such copy made. . . ."

[5] See Public Acts 2001, No. 01-130; Public Acts 2005, No. 05-283; Public Acts 2007, No. 07-163; Public Acts 2011, Nos. 11-51 and 11-80; Public Acts 2012, No. 12-177; Public Acts 2013, Nos. 13-3 and 13-220.

[6] On appeal, the plaintiffs have not challenged the trial court's determination that the three commission decisions are time-tested.

[7] "[W]e will not undertake an examination of [a statutory provision] with blinders on regarding what the legislature intended [it] to mean. . . . In interpreting a statute, common sense must be used . . . . The law favors rational and sensible statutory construction. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. . . . When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid [it]." (Citations omitted; internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 306–307, 732 A.2d 144 (1999).

[8] Moreover, the plaintiffs cite no authority for the proposition that the disclosure of the name and address of an applicant to an interviewee by a local issuing authority is inconsistent with the statute prohibiting the public disclosure of the names and addresses of applicants under the act.

[9] The plaintiffs, without any analysis, make the following additional claim in their appellate brief: "The [commission's] acquiescence to the flagrant and public violation of its holding in *Sherman* does not warrant and is contrary to any deference by a court." No such argument was made before the trial court, and the plaintiffs fail to indicate the ways in which the commission has acquiesced to the actions of the other agencies or what action the commission should have taken. We do not address this claim.

[10] "In construing a statute, a court presumes that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *Silver* v. *Holtman*, supra, 149 Conn. App. 249.